**PAUL BLACKWELL CO. v. DALLAS TRANSFER & TERMINAL WAREHOUSE CO.**

No. 4876.

Court of Civil Appeals of Texas. El Paso.

July 23, 1952.

Rehearing Denied Aug. 13, 1952.

Lee T. Johnson, Jr., and Tom E. Bryan, both of Dallas, for appellant.

Phinney, Hallman, Reed & Holley, Dallas, for appellee.

PRICE, Chief Justice.

This is an appeal from a judgment of one of the District Courts exercising jurisdiction in Dallas County. Dallas Transfer & Terminal Warehouse Company, a corporation doing business in the city of Dallas, hereinafter called plaintiff, recovered a judgment against Paul Blackwell Company, hereinafter called defendant, in the sum of $1,720. The basis of plaintiff's suit was to recover the reasonable value of its services for moving office equipment and a stock of merchandise of defendant from one location in the city of Dallas to another. The trial was before the court without a jury. The court filed Findings of Fact and Conclusions of Law.

Plaintiff on May 12, 1949, acting through its employee, Stubblefield, addressed a letter to defendant, attention of Mr. McCamey, an employee, as follows:

"Dear Mr. McCamey:

"In accordance with your request we are submitting our estimate covering your move from Richardson Street to new quarters at Inwood and Lemmon.

"We plan to use one fork lift and operator at your plant for use in loading trucks. Your own fork lift will be utilized for unloading at new quarters.

"We will have available three flat bed trucks using two of them for shuttle service and the third as a fill-in subject to any delay that could occur in processing the move. This third truck will only be used in order to keep an even flow of merchandise to offset between plant operations of the other two trucks. As your present stock now stands we feel that the move can be accomplished within 14 working hours and setting our estimate on standard hourly rates of men and equipment can offer a relatively close estimate.

"In our discussion we planned to use 9 hours of one working day and up to 5 hours another. Naturally, this can be

worked out to your satisfaction nearer the actual date of your move.

"Sufficient dollies, two wheelers, and Allied equipment will be furnished, and we will have adequate man power at our disposal and will fluctuate them as the needs arise.

"We will use our regular household goods vans for removal of office equipment and supplies.

"Our estimate of cost covering the above operation will run from $510.00 to $540.00.

"Naturally this estimate would be subject to reduction if present stock is absorbed in part by sale or by moving in your company truck.

"We wish to thank you for the opportunity of making this estimate and trust that you will give every consideration to our trained personnel and 'knowhow' on large moves, keeping to a minimum the time lost in your regular operations while moving into your new quarters.

> "Yours very truly,
> Dallas Transfer & Terminal
> Warehouse Co.
> s/ R. H. Stubblefield,
> t/ R. H. Stubblefield,
> Household goods department."

The defendant, prior to the writing of this letter had requested plaintiff to submit an estimate of the cost of rendering the services described in the letter. Plaintiff sent its employee, Stubblefield, and another employee, to make an inspection and on the same day after such inspection wrote the letter above copied to the defendant. The defendant thereafter communicated its acceptance of the offer to plaintiff, and prior to the 24th day of June, 1949, which fell on Saturday, requested that the move be made on that day.

Among the Findings of Fact of the trial court were the following: I find that on or about June 24, 1949, plaintiff at the special instance and request of defendant drayed and transported its properties located at 1302 Richardson Street, Dallas, Texas, to its new building at the corner of Lemmon Avenue and Inwood Road, Dallas, Texas. It was further found that the reasonable value for performing the services which were itemized in the Finding was the sum of $1,720. The court further found that the letter dated May 12 was an estimate only of the charges to be made for such proposed move, and that the figure of $510 to $540 did not constitute a binding contract price, but was only a rough or approximate calculation and that it was intended by plaintiff that the charges for such move might be more or less.

■ The services in question were performed in pursuance of a contract. A determination as to whether the amount of compensation was fixed by the contract is determinative of the controversy. The contract fixed no definite sum as compensation for the services. Appellant contends the rate of compensation was specific to this extent; it was for the reasonable value of the services contemplated to be rendered, not to exceed the sum of $540. Defendant asked plaintiff for an estimate as to the charges for performing the services. Plaintiff, after inspection, wrote the letter to defendant copied herein. This letter specified the sum total for the services to be performed and the means and manner of their performance. Plaintiff's object in writing the letter was to obtain the contract for performing the services. Defendant's object in preferring the request for an estimate was to ascertain what plaintiff would charge to perform the services. The letter in substance specified the services would be performed for between $510 and $540. Defendant contends this letter constituted an offer to do the work for a maximum of $540. After receipt of this letter defendant employed plaintiff to perform the service. If this letter constituted an offer, defendant's conduct was such that it was an acceptance as a matter of law. As stated, there could be but one purpose on the part of defendant in requesting plaintiff to submit an estimate of the cost to it for the services. There could be but one purpose on the part of appellee in submitting this estimate—that is to obtain the contract for performing the service. In this cause appellant concedes it is legally liable for $540.

■ It is thought to be elementary there is no legal prohibition against fixing a

maximum and minimum compensation for services to be performed. Bates v. St. Anthony Church, 111 Neb. 426, 196 N.W. 638; Harris v. Lattimore, Tex.Civ.App., 44 S.W.2d 1037. Here the exact extent of the services was uncertain. Under the agreement plaintiff was entitled to the legal value of the services, provided same did not exceed $540. As stated before, the law does not inhibit such a contract.

█ It is to be noted that this offer fails to specify the time appellee was to begin the performance of the services. In connection with the surrounding circumstances it seems fair to construe the contract to mean on demand of defendant, and plaintiff and defendant seem to agree on this. Defendant in a reasonable time prior to the 24th day of June, 1949, requested that plaintiff begin the service on the 24th day of June, 1949. This was Saturday, but the request had been made and either expressly or impliedly assented to some time previous to that date. On Saturday it was raining. Defendant insisted on having plaintiff proceed. Plaintiff protested and his agent conducting the operation testified that he informed defendant it would cost it more money if the move was made when it was raining. There is testimony that defendant insisted on plaintiff proceeding with the contract, which plaintiff did. There can be no doubt that plaintiff was to perform these services as an independent contractor. However, the contract was not silent as to the means plaintiff was to use. It was contemplated that the one fork lift of plaintiff was to be used and one fork lift of defendant. It was likewise specified that plaintiff should use flat bed trucks.

█ It is thought defendant had no legal right to have this contract performed by other means than that contemplated by the parties and specified in the contract. It was contemplated by each of the parties that flat bed trucks rather than covered vans be used in moving the goods other than office furniture. In our opinion appellant was not legally entitled to compel appellee to perform the services at such

a time as covered vans were necessary. Beyond a doubt plaintiff was entitled to postpone the move until such a time as the weather permitted the use of the sort of equipment contemplated. On the other hand, beyond question plaintiff could have waived this right and proceeded to consummate the move in the way it was accomplished.

The testimony is not undisputed as to whether or not there was a novation—a novation as to the amount to be charged. Under plaintiff's testimony this issue is raised. The agent testified that he stated to defendant's agent that the services could not be performed in view of the condition of the weather for the same price as though it were not raining. Stubblefield, the agent conducting the negotiation, testified in substance as follows:

"Q. Now when you testify that Mr. Cook and you were together with Mr. McCamey, and he said go on and move it, did you tell him that the amount of money that you were going to later ask would be greater than $540 or greater than $350? A. We only said this: That in using different type equipment that it was going to require more time in the shuttle service between the two points due to the fact it was raining and the fact we had to use different equipment, and it would run the cost up."

█ It is apparent that there was a question for the jury as to whether the provision as to the price as specified in the offer was abrogated, in which case the reasonable value of the services performed would be the measure of compensation.

The trial court tried this case on the theory that no measure of compensation resulted from the written offer and the acceptance thereof. What the trial judge would have found on the issue of novation does not appear. It is clear that in his mind no measure of compensation was fixed in the contract for the performance of the services. This we think erroneous. The case was tried on a fundamentally erroneous theory and should be reversed.

Benoit v. Wilson, Tex.Sup., 239 S.W.2d 792, loc. cit. 799, par. 8.

It is accordingly ordered that the judgment of the trial court be reversed and the cause remanded for another trial.