**Robert Lawrence BEEMAN et ux., Appellants,**

v.

**John WORRELL, Appellee.**

No. 20423.

Court of Civil Appeals of Texas, Dallas.

Feb. 12, 1981.

Jack Pew, Jr., Jackson, Walker, Winstead, Cantwell & Miller, Dallas, for appellants.

Carl David Adams, Adams, Mims & Vorpahl, Dallas, for appellee.

Before GUITTARD, C. J., and AKIN and ROBERTSON, JJ.

GUITTARD, Chief Justice.

The principal question in this case is the measure of a building contractor's recovery for a part performance which the jury has found was not substantial. The trial court apparently awarded the market value of the house as constructed, less the owners' payments and the cost of remedying certain defects, and the owners appeal. We hold that this amount was properly determined to be the net benefit to the owners from the contractor's part performance. We also hold that the owners are not entitled to recover damages for breach of a contractual warranty without establishing the contract price under a cost-plus-fee contract. Accordingly, we affirm.

The contractor sued for a balance alleged to be due on a cost-plus-fee contract and in the alternative in *quantum meruit* for "money, time, labor and materials" advanced for the construction of a home at the instance and request of the owners. The owners counterclaimed under the Deceptive Trade Practices Act, section 17.50, 1977 Tex.Gen.Laws, ch. 216, § 5, at 605, for damages for breach of an express warranty that the work would be of "fine quality construction." As damages, they alleged the reasonable cost of completing the work and remedying defects and, alternatively, the difference between the value of the building as constructed and its value if constructed according to plans and specifications.

No complaint is made of the sufficiency of the evidence to support the verdict or the submission of any of the special issues. In answer to the issues submitted, the jury found, respectively, (1) that the contractor did not substantially perform, (2) that $30,500 would be the reasonable cost to place the house in the condition it would have been in, had there been substantial performance, (3) that $170,000 was the reasonable cash market value of the house, excluding the lot, when the contractor discontinued working, (4) that $185,000 would have been the reasonable cash market value of the house if constructed according to the contract, (5) that the reconstruction of the game room in accordance with the contract would be economically wasteful, but that the reconstruction or repair of four other items would not be economically wasteful, and (6) that the reasonable cost to remodel and reconstruct these other four items would be $20,500 in the aggregate. The jury also found (7) that the contractor warranted that he would construct the house "within the limits of fine quality construction," (8) that the owner relied on such warranty, (9) that the contractor did not comply with the warranty, and (10) that his failure to comply was a producing cause of the damages suffered by the owners.

On this verdict both parties moved for judgment. The owners moved for judgment for three times the $20,500 found by

the jury as the cost of reconstructing or remodeling those items that could be repaired or reconstructed without economic waste, and for an attorney's fee in an agreed amount. The contractor moved for judgment for $71,538.45, which he alleged to be his costs and his fee under the contract over and above the owners' payments, less the offset of $20,500 which the jury found in answer to issue number six, a net of $51,038.45, plus an attorney's fee in an agreed amount. The contractor's motion does not mention a *quantum meruit* recovery. The trial court overruled both of these motions, denied recovery on the counterclaim, and rendered judgment for the contractor for $37,500 and the agreed attorney's fee of $3,000. The judgment does not recite how the sum of $37,500 was computed, but the parties agree that the court took the figure of $170,000, found by the jury in answer to special issue number three, as the market value of the house as constructed, and deducted from that figure the owner's payments of $112,000 and also the $20,500 cost of repairs and reconstruction found by the jury in answer to special issue number six.

### 1. Contractor's Claim for Part Performance

On this appeal both parties complain of the judgment. The contractor concedes that he cannot recover under the contract, but contends that the trial court erred in refusing to award him judgment in *quantum meruit* for $170,000, which the jury found to be the value of the house as constructed, less the payments of $112,000 already received. He argues that this finding of the value of the defective building necessarily allows for any defects, and that the court erred in allowing another deduction for the cost of remedying defects. The owners contend that the court erred in awarding any recovery in addition to the payments received because recovery in *quantum meruit* can only be based on the value of the contractor's services rather than on the market value of the building, which may be attributable to other factors and because no issues were requested or submitted justifying recovery in *quantum meruit*.

We conclude that the trial court properly allowed recovery in *quantum meruit* for the owner's net benefit after offsetting the owner's damages against the market value of the building. Since the contractor has not complied with his contract, his recovery must make allowance for all costs necessary to permit the owner to remedy any defects that can be remedied without economic waste, even though the cost of remedying such defects may not be reflected in the market value. To award the contractor the full market value of the defective building would have the effect of denying the owner's right to damages sufficient to give them the building for which they contracted.

On the other hand, the value of the contractor's services cannot be considered apart from enhancement of the value of the property, because what the contractor's labor and materials were reasonably worth in the market may be more or less than the amount of the enhancement. Thus the market value of the building as constructed, less the cost of remedying defects that may be remedied without economic waste, is a proper measure of the contractor's recovery in *quantum meruit*. We recognize that this recovery should not be in excess of the contractor's reasonable expenditures for labor and materials, but in the absence of proof that the amount of these expenditures would be less than the value of the net benefit received, we hold that judgment for the amount of the net benefit was proper.

These conclusions are well supported by authority. The principle controlling a defaulting contractor's recovery for a part performance, as stated in Restatement of Contracts, § 357 (1932), is the net benefit to the owner in excess of the harm caused by the contractor's breach. *Accord*: 5A Corbin, Contracts §§ 1124, 1125 (1962). In determining this net benefit, the market value of the partially completed building is a relevant inquiry. *Gonzales College v. McHugh*, 21 Tex. 256, 259–60 (1858) (evi-

dence of market value admissible); *Grube v. Nick's No. 2*, 278 S.W.2d 252, 254 (Tex. Civ.App.—El Paso 1955, writ ref'd n. r. e.) (market value of land before construction and after abandonment of incomplete structure must be shown); *cf. Krupicka v. White*, 584 S.W.2d 733, 736–37 (Tex.Civ. App.—Tyler 1979, no writ) (net benefit from improvements erected under void contract). The value of the part performance is subject to offset to the extent of any damages to the owner resulting from the contractor's breach because the owner is entitled to the equivalent of the building for which he contracted at the price he agreed to pay. *City of Sherman v. Connor*, 88 Tex. 35, 29 S.W. 1053, 1056 (1895); *United States Pipe & Foundry Co. v. City of Waco*, 100 S.W.2d 1099, 1112 (Tex.Civ.App. —Waco 1936), *aff'd*, 130 Tex. 126, 108 S.W.2d 432 (1937). This principle is illustrated in the Restatement of Contracts, under section 357 at 628, as follows:

> 3. A contracts to erect a building for B, who promises to pay $10,000 on completion. After spending $8,000 on the work, A becomes insolvent and cannot complete it. The uncompleted building is worth $7,000 as an addition to B's property. It cost B $4,000 to complete the building, and he loses $500 in rent because of delay. A can get judgment against B for $5,500—this being the value of the part performance less the harm caused by the breach.[1]

■ The value of the contractor's services may be a proper measure of his recovery if the value of his services is considered from the point of view of the value of the product to the owner, rather than the reasonable value of an equal amount of labor and materials in the market. The two may not be the same. *See Muller v. Nelson, Sherrod & Carter*, 563 S.W.2d 697, 701 (Tex. Civ.App.—Fort Worth 1978, no writ). As Professor Corbin points out, a defective building may be worth far less than the market costs of the labor and materials used in constructing it. 5A Corbin, Contracts, § 1124, at 14; *accord: Gonzales College v. McHugh*, 21 Tex. 257, 259–60 (1858). Consequently, the net benefit received by the owner, rather than the market value of the labor and materials supplied by the contractor is a proper measure of the defaulting contractor's recovery for part performance.

■ In other circumstances the market value of the labor and materials, as distinguished from the value of the product, may be a proper measure of *quantum meruit* recovery. If the contractor's failure to complete the building results from the owner's breach rather than his own, the contractor may elect to rescind the contract and recover for the reasonable value of his services. *Kleiner v. Eubank*, 358 S.W.2d 902, 905 (Tex.Civ.App.—Austin 1962, writ ref'd n. r. e.). In that event, the contractor is entitled to recover in *quantum meruit* the reasonable value of the labor and materials he has put into the building in accordance with the contract, whether the result has any value to the owner or not. *See Manett, Seastrunk & Buckner v. Terminal Building Corp.*, 120 Tex. 374, 39 S.W.2d 1, 5 (1931); *Texas Associates v. Joe Bland Const. Co.*, 222 S.W.2d 413, 422 (Tex.Civ.App.—Austin 1949, writ ref'd n. r. e.). Also, as Professor Corbin points out, the cost of the labor and materials in the market is the measure of value if the work is performed properly at the owner's request without any agreement on the price. Corbin, *supra*, at 14; *see Colbert v. Dallas Joint Stock Land Bank*, 136 Tex. 268, 150 S.W.2d 771, 776 (1941);

---

1. This illustration allows the owner an offset of the amount necessary to put him in the position he would have enjoyed if the contract had been fully performed. He must pay $4,000 to complete the building, loses $500 from the delay, and pays the contractor the balance of $5,500 on the contract price of $10,000. The contractor recovers $1,500 less than the value of the incomplete structure, which is given as $7,000. This formula cannot be applied exactly to the present case because the contract price, based on the contractor's cost, has not been determined. Instead, the owner's cost of remedying the defects has been offset against the value of the incomplete structure. This judgment may be more favorable to the owner than if the contract price had been determined, but the contractor cannot complain because he has not established any other basis for a *quantum meruit* recovery.

*Muller v. Nelson, Sherrod & Carter,* 563 S.W.2d 697, 700–01 (Tex.Civ.App.—Fort Worth 1978, no writ); *Paul Blackwell Co. v. Dallas Transfer & Terminal Warehouse Co.,* 252 S.W.2d 501, 504 (Tex.Civ.App.—El Paso 1952, writ ref'd n. r. e.). However, Professor Corbin also points out that when the contractor is in default, justice requires no more than that the owner pay the excess of benefit received over injury suffered. *Id.,* at 14, 15.

We acknowledge that not all the Texas opinions recognize this distinction. *See, e. g., Houston Lumber Supply Co. v. Wockenfuss,* 386 S.W.2d 330, 336 (Tex.Civ.App.—Houston 1965, writ ref'd n. r. e.); *Bratcher v. Moore,* 219 S.W.2d 527, 530 (Tex.Civ.App.—Amarillo 1949, no writ). Some of these cases may be distinguished on their facts. For example, in *Houston Lumber Supply Co. v. Wockenfuss, supra,* on which the owners rely, the market value of the building was held not to be a proper measure of recovery in view of defects so serious that a fact question existed as to whether the structure was accepted, even though the owner had occupied it because of economic necessity. The trial court had made no allowance for offsetting damages, and the appellate court observed that the measure of a *quantum meruit* recovery "ordinarily is the reasonable value of the work performed and material furnished, which is not the same as the market value of the building." We regard the result in that case as consistent with section 357 of the Restatement and the other authorities above cited.

■ We recognize the force of the argument that a defaulting contractor is not equitably entitled to a profit on his incomplete performance, and, therefore, ought not to recover more than his reasonable expenditures for labor and materials, even though they may have enhanced the owner's property by a greater amount. We think it unlikely that the contractor will realize a profit if the court applies the Restatement principle of allowing the owner's offsetting damages. Moreover, since *quantum meruit* is based on equitable considerations, no particular formula is necessarily the exclusive measure of a defaulting contractor's recovery for part performance. The court may allow recovery of the contractor's expenditures if they do not exceed the benefit to the owner, taking into consideration the owner's damage. *See Continental Nat'l Bank v. Conner,* 209 S.W.2d 639, 641 (Tex.Civ.App.—Fort Worth) *aff'd* 147 Tex. 218, 214 S.W.2d 928 (1948); *Lozano v. Thomas W. Blake Lumber Co.,* 16 S.W.2d 983 (Tex.Civ.App.—San Antonio 1929, no writ). This formula may properly be applied to limit the contractor's recovery, but the owners have not called our attention to any evidence indicating that such a limit, if applied in this case, would have resulted in a smaller recovery than that allowed by the trial court. Consequently, we find no error in the judgment.

■ Neither can the contractor's recovery be denied on the ground that although the contractor pleaded in the alternative for a *quantum meruit* recovery, he did not request any issues supporting such a recovery or pray for *quantum meruit* recovery in his motion for judgment. Apparently the issues concerning the value of the incomplete structure and the cost of remedying defects were submitted in order to support a recovery on the contract in the event the jury should find substantial performance. Notwithstanding the purpose of requesting these issues, the court was required by rule 379 of the Texas Rules of Civil Procedure to submit the issues raised by the pleadings and evidence and was required by rule 300 to render judgment on the jury's findings. We hold that the pleadings, evidence, and verdict support the trial court's determination that the value of the incomplete structure was $170,000, that the owner's damage because of remediable defects was $20,500, that any damage from defects not so remediable was fully included in the allowance of a reduction of $15,000 in the value of the building (the difference between $185,000, the value of the building if constructed according to the contract and $170,000, its value as constructed) and that the net benefit to the owners from the

contractor's part performance was $149,500. Therefore, the trial court properly allowed the contractor recovery of this amount, less the $112,000 previously paid.

## 2. Owners' Claim for Breach of Warranty

The owners also contend that the trial court erred in overruling their motion for judgment on their counterclaim for treble damages based on the contractor's breach of the express warranty of "fine quality construction." They insist that the jury's finding that the breach of warranty was a producing cause of their damages entitles them to recover the $20,500, found by the jury in answer to issue number six as the cost of repair and reconstruction of certain specified defects, and that this amount should be trebled under section 17.50(b)(1) of the Deceptive Trade Practices Act, 1977 Tex.Gen.Laws, ch. 216, § 5, at 605.

We conclude that the owners are not entitled to treble damages. They have already been allowed an offset of $20,500 in determining their net benefit from the contractor's part performance. They cannot properly be awarded the same amount again by way of damages. Unless a claimant is awarded a net recovery over his adversary's claim, he is not entitled to treble damages under the Deceptive Trade Practices Act, Tex.Bus. & Com.Code Ann. § 17.50(b). *Smith v. Baldwin*, 611 S.W.2d 611 (1980); *Atlas Amalgamated, Inc. v. Castillo*, 601 S.W.2d 728, 730 (Tex.Civ.App. —Waco 1980, writ ref'd n. r. e.).

Moreover, the owners cannot recover damages for breach of the contractual warranty without standing on the contract as the measure of the rights of the parties. If they elect that course, the measure of their damages is the amount necessary to place them in the same position as if the contract had been fully performed on both sides. This measure of damages has been formulated as the excess of the reasonable cost of completion over and above the unpaid portion of the contract price. *Free-*

*man v. Shannon Construction, Inc.*, 560 S.W.2d 732, 735 (Tex.Civ.App.—Amarillo 1977, writ ref'd n. r. e.); *McKnight v. Renfro*, 371 S.W.2d 740, 745 (Tex.Civ.App.—Dallas 1963, writ ref'd n. r. e.). This formulation is equivalent to saying that the owner is entitled to the excess of his total outlay to the contractor and other contractors over and above the contract price in order to obtain the building specified in the contract. Under this measure of damages, since in this case the contract fixes the contractor's compensation at his cost plus a fee, the owners were required to establish the contract price by proving what the contractor's reasonable cost would have been if the building had been construed according to the contract. Their damages would then be the excess of their cost of completion over and above the unpaid balance of that contract price. To the extent that any defects, such as that concerning the game room, are not remediable without destroying a disproportionate amount of good work, the alternative measure of the difference in value applies. *Hutson v. Chambless*, 157 Tex. 193, 300 S.W.2d 943, 945 (1957). Either measure, however, (or both together with respect to different defects) is recoverable only to the extent of the excess of their payments and completion costs (or difference in value) in excess of the price they agreed to pay for the building, so that the net effect is to give them the equivalent of the building they bargained for at the price they agreed to pay. They cannot justly demand more.

Of course, the owners are not required to assert any rights under a contract which the contractor has not substantially performed. They may elect to deny liability under the contract and stand liable only for any net benefit they have realized from the contractor's part performance. In determining that net benefit, their cost of remedying defects in the building may be considered, as we have held in upholding the contractor's recovery for his part performance. Nevertheless, they cannot do both. They cannot affirmatively recover

damages under the contract without proving all the elements of the contract measure of damages, including the contract price, and allowing the contractor credit for whatever part of the work he has performed.

For the reasons stated, we hold that the owners' cost of remedying defects does not in itself establish the amount of damages resulting from the contractor's breach of warranty. Consequently, the trial court properly denied the owners treble damages for breach of warranty under the Deceptive Trade Practices Act.

Affirmed.