**Virgil GUERRA, Jr., Appellant,**

v.

**J. O. BRUMLOW, Appellee.**

**No. 16637.**

Court of Appeals of Texas,
San Antonio.

Feb. 24, 1982.

T. Kellis Dibrell, Dibrell, Dotson, Dibrell & Dibrell, San Antonio, for appellant.

Ted Lee, San Antonio, M. C. Whitehead, Long & Whitehead, Karnes City, for appellee.

Before CADENA, C. J., and KLINGEMAN and ESQUIVEL, JJ.

## OPINION

KLINGEMAN, Justice.

This is an appeal from a take-nothing judgment entered against plaintiff Guerra in a deceptive trade practice claim involving the purchase of a bull. Plaintiff purchased a bull, El Toro I, along with some other animals at an auction. Plaintiff executed a promissory note payable to Brumlow and Farris as a consideration for the animals purchased, including El Toro I. Farris subsequently sold his interest in the note to Brumlow. Plaintiff's deceptive trade practice action not only included a claim in respect to El Toro I but other claims also. Brumlow counter-claimed against Guerra for the alleged balance due on the promissory note. Trial was to a jury. Brumlow moved for a judgment in part *non obstante*

veredicto and in part based on the jury verdict. The trial court entered judgment denying plaintiff relief under Texas Deceptive Trade Practices Act and awarded Brumlow the unpaid balance due on the note from Guerra. Brumlow was awarded attorney's fees against Guerra, but Guerra's claim for attorney's fees was denied. A take-nothing judgment was entered in favor of Edmund Tom, a third party in Brumlow's third party complaint against Tom. No appeal was taken as to the Edmund Tom portion of the judgment.[1]

The jury in the trial below found that Brumlow made a misrepresentation that the bull in question, El Toro I, was a good breeder when in fact it was not; that such was the proximate cause of damages to Guerra; and that the sum of $1,850.00 would reasonably compensate Guerra for his damages.

The pertinent facts of the case relating to the sale of El Toro I to appellant are largely undisputed. An auction was held by the American Brahmental Association on April 30, 1977. Dr. Farris and Dr. Brumlow, both veterinarians, were officers in that association. Dr. Farris was an employee of Dr. Brumlow's and they were members of a ranching partnership also. Prior to the April 30 sale, Guerra went to a feedlot with Farris and Brumlow to look at some animals to purchase. Guerra chose two bulls, but since they had already been consigned to the sale, it was agreed that the bulls would be run through the sale and Guerra would purchase them there. Before the sale, the two bulls were tested for fertility and were found to be unsatisfactory; therefore, Guerra then purchased El Toro I at the auction. Guerra paid $1,850.00 for El Toro I and Brunlow guaranteed him to be a good breeder. Guerra also bought several other animals at the sale. Guerra did not pay for the animals at that time, but later executed a note on May 11, 1977, as payment for the animals. The note was made payable to both Farris and Brumlow and

---

1. The case in the trial court involved a number of other claims and issues which are not before us on appeal.

included the purchase price of El Toro I. Farris subsequently assigned his interest in the note to Brumlow and Brumlow is now the sole owner of the note.

After Guerra had taken delivery of El Toro I, he noticed that the bull was not following the cows. Guerra took the bull to a Dr. Nelson who tested the bull for fertility and found him to be a questionable potential breeder. Guerra then returned the bull to Brumlow and brought this suit against Brumlow for representing that El Toro I was a good breeder when, in fact, he was not. Brumlow counterclaimed for the amount still due on the note. Brumlow did not give Guerra credit on the note for the return of the bull. The bull, El Toro I, was killed by a poacher.

In this opinion, the contentions made by both plaintiff and defendant will be discussed in the following general areas: 1) deceptive trade practices; 2) promissory note; 3) submission of issues; 4) indispensible parties; 5) attorney's fees.

## DECEPTIVE TRADE PRACTICES

A basic issue in the appeal is whether plaintiff Guerra can maintain an action as a "consumer" under the Deceptive Trade Practice Act against the defendant who allegedly owned no interest in the bull. Plaintiff contends that the recent Supreme Court decision of *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535 (Tex.1981) is controlling and that it allows him to recover under the Act even against one who is not the owner and seller of the goods. Defendant argues that Guerra was not a "consumer" within the Act as to Brumlow, even in the light of the recent Supreme Court ruling. Defendant maintains that he was a mere bystander to the transaction involving the sale of the bull. We disagree and hold that plaintiff is entitled to maintain this action against defendant as a consumer under the Act.

Until the Supreme Court handed down its opinion in *Cameron v. Terrell & Garrett, Inc.* the general rule was that in order to recover as a consumer under the Act one must seek or acquire goods or services from the person he sues. *See Rutherford v. Whataburger, Inc.*, 601 S.W.2d 441 (Tex. Civ.App.—Dallas 1980, writ ref'd n. r. e.); *Rodriguez v. Texas Employers' Ins. Ass'n.*, 598 S.W.2d 677 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n. r. e.); *Barthlow v. Metcalf*, 594 S.W.2d 143 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ dism'd); *Hi-Line Electric Co. v. Travelers Ins. Co.*, 587 S.W.2d 488 (Tex.Civ.App.—Dallas 1979, writ ref'd n. r. e.) *(per curiam)*, 593 S.W.2d 953 (Tex.1980). In *Cameron* however, the Supreme Court expressly disapproved *Hi-Line Electric Co. v. Travelers Ins. Co., supra*, and *Barthlow v. Metcalf, supra*, to the extent that they are inconsistent with the Supreme Court opinion. The *Cameron* case involved the purchase of a house by the plaintiffs, who relied on the representation by the seller's real estate agency that the house was of a certain square footage when it was, in fact, smaller. The plaintiffs sued the agency, which argued that the plaintiffs were not "consumers" under the Act as to the agency, since the plaintiffs did not seek or acquire goods or services furnished by such agency. The Supreme Court, in construing the definition of "consumer" under the Act, stated:

We find no indication in the definition of consumer in section 17.45(4), or any other provision of the Act, that the legislature intended to restrict its application only to deceptive trade practices committed by persons who furnish the goods or services on which the complaint is based. Nor do we find any indication that the legislature intended to restrict its application by any other similar privity requirement. In contrast, privity requirements have been dispensed with altogether in negligence suits, in implied warranty suits for economic loss, and, for the most part, privity requirements have also been abolished in strict liability suits. [Citation omitted.] The Act is designed to protect consumers from any deceptive trade practice made in connection with the purchase or lease of any goods or services. [Citation omitted.] To this end we must give the Act, under the rules of liberal construction, its

most comprehensive application possible without doing any violence to its terms. *Id.* at 540–41. The court then went on to hold that a person need not seek or acquire goods or services furnished by the defendant to be a consumer as defined in the Act and that the plaintiffs in *Cameron* were consumers because they purchased the goods on which their complaint is based.

■ The defendant in the case before us argued that *Cameron* is not controlling because the defendant in that case was the agent of the seller and was acting in the course of trade and commerce for compensation while the defendant here was a mere bystander to the transaction. It is clear that the Supreme Court placed no such restriction on the defendant. The Supreme Court stated in *Cameron* that the Act expressly provides that a consumer can bring suit if he has been adversely affected by "the use or employment by any person of an act or practice declared to be unlawful in section 17.46." Under the facts of this case Brumlow cannot be classified as a mere bystander. Assuming that Brumlow owned no interest in the particular bull which was involved in this suit, Brumlow was one of the officers in the association sponsoring the sale. It is clear that Brumlow was working closely with Dr. Farris in the sale: the purchase money note was payable to both Brumlow and Farris, and Brumlow later acquired the entire interest in the note. Guerra dealt with Brumlow in regard to the transaction, and Brumlow represented to Guerra that the bull in question was a good breeder. Guerra is entitled to a "consumer" status as to Brumlow.

The judgment denying Guerra damages against Brumlow in his deceptive trade practices claim is reversed and judgment here rendered for Guerra in the amount of $1,850, the amount of actual damages found by the jury.

## PROMISSORY NOTE

■ Failure of consideration for a contract of sale or for notes given for purchase price of property may be shown by the fact that the purported property does not exist, or that it was worthless, or not as represented to the buyer. *Stallings v. Moore,* 73 S.W.2d 562 (Tex.Civ.App.—Fort Worth 1934, no writ); 13 Tex.Jur.2d § 71, Contracts. Since the issue of misrepresentation was submitted to the jury and found in Guerra's favor, we think a partial failure of consideration has been shown and Guerra is entitled to a setoff in the amount of $1,850, the purchase price of the bull in question.

Brumlow argues that Guerra failed to carry his burden of proving the amount of setoff because the damage issue included the wrong measure of damages. The damage issue as submitted to the jury inquires as to what amount of money would reasonably compensate Guerra. If there was any error in such submission, it was waived because Brumlow failed to properly object at trial. Unless a party objects to a charge on the grounds that it submits an improper measure of damage, he waives the objection and cannot complain on appeal that the charge permitted the jury to find damages based on the wrong measure. Tex.R.Civ.P. 274; *American Transfer & Storage Co. v. Reichley,* 560 S.W.2d 196 (Tex.Civ.App.—Amarillo 1977, writ ref'd n. r. e.); *Lamphier Construction Co. v. Fowco,* 523 S.W.2d 29 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n. r. e.); *City of Amarillo v. Betts,* 429 S.W.2d 685 (Tex.Civ.App.—Tyler 1968, no writ).

## ISSUE SUBMISSION

■ Brumlow complains of the submission of the issue inquiring as to whether El Toro I was not a good breeder on the date of delivery to Guerra, June 7, 1977. He argues that the inclusion of the date of delivery in the issue was error because there was no pleading or evidence that Brumlow promised the bull would be a good breeder on that particular date. In support of this contention he argues that there was evidence that the reason the bull was not a good breeder on that date is that he was still immature and that maturity would occur over a period of time. We agree with Guerra that the correct date was the date of delivery and a buyer cannot reasonably

be expected to hold a bull until some indefinite time in the future when the bull might mature into a good breeder. There is evidence that the bull was delivered on June 7, 1977, and it can be assumed that the representation made by Brumlow referred to that date. The term "was a good breeder" logically cannot refer to an indefinite future date.

## INDISPENSABLE PARTY

■ Brumlow complains that Dr. Farris who was allegedly the owner of El Toro I before it was sold to Guerra, was an indispensable party to the cause of action. The question was not raised at the time of trial and is presented for the first time at the appellate stage. The failure of Brumlow to object to the lack of joinder resulted in a waiver of the right to complain. Tex.R. Civ.P. 93; *Sam Kane Beef Processors, Inc. v. Manning*, 601 S.W.2d 93 (Tex.Civ.App.—Corpus Christi 1980, no writ).

■ Rule 39, as amended in 1970, initiated an entirely new method for resolving the question of joinder of parties. *Cooper v. Texas Gulf Industries, Inc.*, 513 S.W.2d 200 (Tex.1974); *John P. MaGuire & Co. v. Hannon*, 563 S.W.2d 844 (Tex.Civ.App.—Houston [14th Dist.] 1978, no writ).

In *Cooper, supra,* the Supreme Court in discussing revised Rule 39, stated that one of the aims of the revised rule was to avoid questions of jurisdiction and today concern is less that of jurisdiction of the court to proceed and is more a question of whether the court ought to proceed with those who are present. Further, the court said that under the provisions of present Rule 39, it would be rare indeed if there were a person whose presence was so indispensable in that his presence deprives the court of jurisdiction to adjudicate between the parties already joined.

We do not regard Dr. Farris as an indispensable party under the present rule.

■ Brumlow, by cross-point of error, asserts that even if Guerra is entitled to recover some damages from Brumlow he should not receive trebled damages since Brumlow recovered more than Guerra, thereby becoming the prevailing party. We agree. The trial court's judgment awarded Brumlow $7,189.35 for the amount due on the promissory note and that Guerra take nothing.

By awarding Guerra $1,850 on his deceptive trade practices suit, and allowing him an additional set off of $1,850 for failure of consideration on the El Toro I sale, we have effectively reduced the amount of Brumlow's recovery to the extent of $3,700. Even under the judgment as so reduced and reformed by this court, Guerra received no net recovery and under such circumstances is not entitled to trebled damages. *Smith v. Baldwin*, 611 S.W.2d 611 (Tex.1980); *Beeman v. Worrell*, 612 S.W.2d 953 (Tex. Civ.App.—Dallas 1981, no writ); *Atlas Amalgamated, Inc. v. Castillo*, 601 S.W.2d 728 (Tex.Civ.App.—Waco 1980, writ ref'd n. r. e.). Guerra is not entitled to recover trebled damages.

## ATTORNEY'S FEES

■ Both parties complained of the award of attorney's fees. Guerra argues that the award of attorney's fees to Brumlow should be reduced since he is due a setoff of $1,850 against the award made on Brumlow on the promissory note, which we have hereinbefore discussed and agreed with. *See Ware v. Paxton*, 266 S.W.2d 218 (Tex.Civ.App.—Eastland 1954, writ ref'd n. r. e.). Guerra also complains that the trial court erred in not awarding him any attorney's fees.

Brumlow contends that Guerra is not entitled to recover any attorney's fees since he was not the prevailing party and did not receive any net recovery. Brumlow also asserts that in the event Guerra is entitled to any attorney's fees, then he can recover attorney's fees only for work relating to El Toro I, the only claim on which he prevailed. The jury found against him as to his other claims.

We are of the opinion that both parties are entitled to recover some attorney's fees, but we are not in a position to determine a

reasonable and proper attorney's fees for the respective parties. We agree that there is error in the award of attorney's fees[2] and feel that the interest of justice would best be served by a reversal and remanded as to the entire matter of attorney's fees. We hold that the matter of attorney's fees should be remanded to the trial court for a determination of reasonable and proper attorney's fees for all parties. The issue of attorney's fees is severed from the remainder of the case. *McDonald v. Savoy*, 501 S.W.2d 400 (Tex.Civ.App.—San Antonio 1973, no writ); *Espinoza v. Victoria Bank & Trust Co.*, 572 S.W.2d 816, 828–29 (Tex.Civ. App.—Corpus Christi 1978, writ ref'd n. r. e.).

The judgment awarding Brumlow a recovery of $7,189.35 is reduced to the extent of $3,700.00, leaving a net recovery of $3,489.35 to Brumlow in his suit against Guerra, together with interest therein as provided in the judgment. The entire matter of attorney's fees is reversed, and this part of the judgment is severed and remanded to the trial court for a determination of reasonable and proper attorney's fees for both parties. The remainder of the judgment as hereinbefore changed and reformed is affirmed.

CADENA, Chief Justice, dissenting.

The conclusion that Guerra is not entitled to treble damages in this case because Brumlow recovered more under his counterclaim than did Guerra under his Deceptive Trade Practices Act claim can be justified only by ignoring the considerations which led to the enactment of the Deceptive

Trade Practices Act in 1973 and, at the very least, by doing violence to the treble damage provision, § 17.50(b)(1), as it existed prior to the 1979 amendments. 1973 Tex. Gen.Laws, ch. 143 § 17.50(b)(1) at 327.

The intent of the legislature in enacting the Deceptive Trade Practices Act was manifestly to deter persons from engaging in the conduct denounced by the statute, to make consumer litigation feasible and to provide an incentive for consumers to initiate litigation to recover damages suffered because of deceptive trade practices. *See Woods v. Littleton*, 554 S.W.2d 662, 669–71 (Tex.1977). We may assume that the mere fact that a statute declares that certain conduct by an actor will result in his liability for damages will have some deterrent effect. Apparently being convinced in 1973 that consumer litigation was not generally feasible because of the small amounts involved in many cases, the legislature chose to encourage consumer litigation by awarding the consumer who successfully established a cause of action not only his actual damages but, in addition, enhanced damages and attorney's fees. Such provisions not only encouraged the injured consumer to file suit, they also operated as a deterrent. Violations were to be deterred by the increase in the amount recoverable by the consumer and by the prospect that suits for deceptive practices would be filed more frequently. Thus, the treble damage provision had a dual deterrent effect.

In construing the enhanced damages provisions, we should not lose sight of the fact that the legislature has expressly command-

---

**2.** Appellant has plead and proved a valid defense against a portion of appellee's claim and we have allowed an off set on the theory of failure of consideration. However, appellee has recovered a substantial portion of his claim and is entitled to a recovery of some attorney's fees. We have held that appellant is entitled to recover on one of his deceptive trade practice claims. In our opinion he is entitled to a recovery of some attorney's fees. The record is somewhat confusing as to the full basis of the claim for attorney's fees sought by the respective parties, and parts at least, seem to be based on the attorney's services in defending a claim or counter-claim of the opposing party, in

which recovery of attorney's fees is questionable. We have concluded that the trial court's award of attorney's fees is erroneous and requires a reversal but we also conclude that the interest of justice would best be served by a remand. Upon a new trial, each of the parties will be entitled to recover attorney's fees only on that portion of their demands that they show themselves justly entitled to. *See Espinoza v. Victoria Bank & Trust Co.*, 572 S.W.2d 816 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n. r. e.); *Ware v. Paxton*, 266 S.W.2d 218 (Tex.Civ.App.—Eastland 1954, writ ref'd n. r. e.).

ed the courts to construe and apply the statute liberally "to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions and breaches of warranty and to provide efficient and economical procedures to secure such protection." Tex.Bus. & Com. Code Ann. § 17.44 (Vernon Supp.1982).

Section 17.50(a)(1) gives a cause of action to a consumer where a false, misleading or deceptive act or practice has been a producing cause of actual damages. Tex.Bus. & Com.Code Ann. § 17.50(a)(1) (Vernon Supp. 1982). Prior to the 1979 amendment, § 17.50(b)(1) allowed each consumer who. prevailed in a suit filed under § 17.50 to recover "three times the actual damages plus court costs and attorney's fees in reasonable relation to the amount of work expended." 1973 Tex.Gen.Laws, ch. 143 § 17.50(b)(1) at 327. The language was simple and clear. A consumer who prevailed in a deceptive trade practice suit was entitled to an award of enhanced damages, attorney's fees, and costs. A consumer prevails in a § 17.50 suit if he establishes that the defendant's false, misleading or deceptive conduct constituted a producing cause of actual damages to the consumer. The statute contained no language which even suggested that a consumer who established that he suffered actual, damages as a result of the defendant's deceptive conduct could not be a prevailing party unless the amount of his actual damages exceeded the amount recovered by defendant under a counterclaim.

*Smith v. Baldwin*, 611 S.W.2d 611 (Tex. 1980), does not support the conclusion that Guerra is not entitled to treble damages. In *Smith*, Baldwin agreed to build a house for Smith for $31,300.00. The jury found that the house was defectively constructed and that Baldwin was guilty of deceptive trade practices which caused Smith actual damages of $4,400.00. The actual damages consisted of $2,900.00 representing interim interest that Smith was forced to pay and $1,500.00 representing the cost of repairing the defects. Smith, however, occupied the house for a period of 10 months without making payments to Baldwin on the note he had signed. The reasonable rental value of the house for such ten-month period was found to be $3,500.00. Smith contended that his actual damages should be trebled before deducting the $3,500.00 that Baldwin was entitled to as a result of Smith's occupancy. Under Smith's theory, Smith would have realized a net recovery of $9,700.00 [ (3 × $4,400.00) – $3,500.00]. The contention was rejected; Justice Steakley, speaking for a majority of the Texas Supreme Court, said:

> The actual damages suffered under 17.-50(b)(1) are determined by the total loss sustained by the plaintiff as a result of the deceptive trade practices. Allowable set offs will necessarily reduce the actual damages and hence the sum subject to trebling. The *net damages* suffered by [plaintiff] that is required to be trebled is the sum of $900, i.e., a total of $2,700. The sum of $900 results from adding the sums of $2,900 interim interest and $1,500 representing the cost of remedying the defects in the house, less the reasonable rental value [of the house which plaintiff had occupied for 10 months] of $3,500. [Emphasis added.]

611 S.W.2d at 617.

*Smith v. Baldwin, supra,* has not escaped criticism.[1]

---

1. "This decision effectively defines 'actual damages' as the net loss plaintiff suffers ... [T]his definition undermines the dual purposes of the Act. The ... treble damages provision was designed ... to deter deceptive practices and promote private suits to ensure compliance with its provisions [*Woods v. Littleton*, 554 S.W.2d 662, 670 (Tex.1977) ]. The Legislature has commanded that the Act be liberally construed to enforce these underlying purposes [Sec. 17.44]. By deducting an ordinary coun-

terclaim before trebling damages ..., the punitive aspect of the Act, and hence its deterrent effect, is eliminated.

"... On the other hand, trebling the actual damages perfectly discharges the Act's function .... Not only does the ... narrow formulation of 'actual damages' directly undermine the Act's deterrent purpose in private enforcement actions, but it also negates the incentive to bring private actions by barring attorney's fees in these suits. A consumer may

Even if we unquestioningly accept *Smith*, it does not support the position taken by the majority in this case. *Smith* does not stand for the proposition that a plaintiff is entitled to enhanced damages only when he realizes a net recovery as a result of the litigation. In *Smith*, the amount deducted from the consumer's damages represented the value of benefits that he received from his free occupancy of the house. The occupancy was a result of the transaction in which misrepresentation concerning the house were made. The record in the case before us contains no suggestion that Guerra realized any benefit as a result of his possession of the bull whose fitness for breeding purposes had been misrepresented by Brumlow. What Brumlow is entitled to recover on his counterclaim is the unpaid portion of the price of the other cattle purchased from Brumlow by Guerra and not the value of benefits received by Guerra because of his possession of the bull which exhibited a total lack of concern for the needs of Guerra's cows. It must be noted that the animals in question were not purchased in bulk by Guerra at the auction. He submitted a separate bid for the bull and became entitled to the animal when no higher bid was made. Guerra's net loss from the transaction which was tainted by the deceptive trade practice was $1,850.00. Even under *Smith*, Brumlow had no valid counterclaim connected with the sale and purchase of the reluctant bull.

Neither *Beeman v. Worrell*, 612 S.W.2d 953 (Tex.Civ.App.—Dallas 1981, no writ), nor *Woo v. Great Southwestern Acceptance Corporation*, 565 S.W.2d 290 (Tex.Civ.App.—Waco 1978, writ ref'd n. r. e.), support the holding of the majority in this case. In both *Beeman* and *Woo*, as in *Smith*, plaintiff realized a financial benefit from the very transaction tainted by the seller's deception.

*Atlas Amalgamated, Inc. v. Castillo*, 601 S.W.2d 728 (Tex.Civ.App.—Waco 1980, writ ref'd n. r. e.), appears to be the only case in which a counterclaim arising from a separate transaction was required to be deducted from the consumer's damages before such damages were trebled. The only authority cited in support of such holding is *Woo*, which, as already noted, involved a set off arising from the very transaction that gave rise to the consumer's Deceptive Trade Practices Act claim.

In *Atlas Amalgamated, Inc. v. Castillo*, *supra*, plaintiff was involved in a collision and his vehicle was taken to Atlas to be repaired in October 1977. At that time, all parties understood that the cost of repairs would be paid by Castillo's insurer. After subtracting the "deductible" of $250.00 which Castillo paid to Atlas, the insurance company was to pay Atlas the balance of the costs of repairs, $1,633.97. Atlas made no effort to collect the balance from Castillo; instead, it insisted that the insurance company pay the balance. Unaware that his insurer had not paid Atlas the balance due for the October 1977 work, Castillo took his automobile to Atlas for work on the air conditioner hose in March 1978. The defect in the air conditioner hose was unrelated to the damage resulting from the October 1977 collision. Atlas later refused to return the vehicle to Castillo, telling him that it had a right to retain possession of the vehicle until Castillo paid the sum of $1,696.29, which amount included the $1,633.97 still owing for the work done by Atlas in October 1977. In fact, Atlas had no right to retain possession until the balance due for the October 1977 work was paid. The jury found that Atlas had converted Castillo's automobile on March 24, 1978, the date it represented to Castillo that it had rights to the vehicle which it did not have, and that the market value of the automobile on that date was $4,200.00. Additionally, the jury

---

recover attorneys' fees only if he has sustained 'actual damages.' [This] possibility of the counterclaim which would exceed the plaintiff's damages will substantially discourage private enforcement actions . . . .

"... [Baldwin] ... makes [the] error of artificially trebling the defendant's counterclaim, and thereby emasculates both the deterrent effect and private enforcement incentives under the Act." D. Bragg, P. Maxwell & J. Longley, Texas Consumer Litigation 73–4 (Supp.1981).

found that the value of the use of the automobile was $3,000.00. The trial court rendered judgment in favor of Castillo for $21,903.71. The judgment was computed as follows: [3 × ($4,200.00 (value of car) + $3,000.00 (value of use)) ] + $2,000.00 (stipulated attorney's fees) − $1,696.29 [$1,633.97 (cost of the October 1977 repairs) + $63.32 (cost of the March 1978 repairs) ]. The Waco Court held that the trial court should have deducted the $1,633.97 due for the October 1977 repairs before trebling the damages suffered by Castillo as a result of the March 1978 conversion, "thus trebling only the net damages suffered by plaintiff." 601 S.W.2d at 730.[2]

Despite *Atlas Amalgamated, Inc. v. Castillo, supra,* I would limit the *Smith v. Baldwin, supra,* holding to a situation where plaintiff's Deceptive Trade Practices Act claim and the defendant's counterclaim arise from the same transaction and plaintiff's counterclaim is based on benefits received by the consumer because of such transaction. While it can, perhaps, be reasonably argued that a determination of plaintiff's "actual damages" requires a consideration of the benefits received by plaintiff as a result of the transaction tainted by the deception, a rule allowing defendant to offset any other claims he may have against plaintiff would do indefensible violence to the statutory language.

If the majority conclusion is correct, there is no basis for allowing an award of attorney's fees to Guerra, as the majority opinion does.

---

2. The failure of the court to give Atlas credit for the cost of the March 1978 repairs ($63.32) is not explained in the opinion, although that portion of the counterclaim is closely connected to the transaction involving the deceptive trade practice.