**Patrick HENNESSEY and Mass-Tex Enterprises, Inc., Appellants,**

v.

**Sam SKINNER, Appellee.**

**No. C14–85–120–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 22, 1985.

James H. Pearson, of DeLange, Hudspeth, Pitman & Katz, Houston, for appellants.

Harry A. Dolan, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and SEARS and ELLIS, JJ.

J. CURTISS BROWN, Chief Justice.

Appellants Patrick Hennessey and Mass-Tex Enterprises, Inc., (the corporation through which Hennessey conducted his business ventures) sued appellee Sam Skinner for breach of contract, fraud, partnership dissolution and violations of the Texas Deceptive Trade Practices Act (hereinafter the Act or the DTPA) in an action stemming from the collapse of their cattle business. Trial was to the court. The court awarded appellants $1266.00 in damages

**384**

but refused to treble the first $1000 of the award under the DTPA or to award appellants prejudgment interest, costs, or attorney's fees. Appellants urge six points of error on appeal, all stemming from the court's finding that appellants were not "consumers" under Section 17.41 of the DTPA. We affirm the judgment as modified.

Patrick Hennessey and Sam Skinner became friends based on their respective wives' common interest in horses and their own in cattle. Hennessey had moved to Richmond, Texas from Boston and wanted to become a cowboy. He hired himself out for a little or no money to ranchers over a period of years to learn to work cattle. He met Skinner in 1981 and began travelling to Skinner's ranch near Monaville, Texas twice a week to help him work his cattle for free.

On June 29, 1982, after working for Skinner for six or more months on this basis, Hennessey paid Skinner $2000 for a ten percent interest in Skinner's herd of 63 cows. He also agreed to pay Skinner $150 per year as his proportionate (ten percent) contribution to Skinner's grass lease. These transactions were evidenced by a bill of sale signed by Skinner. On July 17 of the same year, Hennessey paid Skinner $120 for a ten percent interest in Squanto, a registered Longhorn bull. This transaction was also shown by a bill of sale signed by Skinner. The two men entered into a partnership for the raising and selling of cattle, agreeing to share profits and expenses on a percentage of ownership basis.

A year later, after relations between the parties had become strained, Hennessey learned that at the time he purchased his interest in the cattle, the herd were encumbered by two security interests held by Houston Agricultural Credit Corporation and that they were owned by P&S Partnership, not by Skinner individually. He further discovered that Squanto had been registered in Skinner's name only. Skinner, meanwhile, who was experiencing financial problems, sold at auction all the cattle on the ranch, including Squanto, to pay his indebtedness to the Credit Corporation. Skinner received $12,660.00 for the cattle but did not account for any of the proceeds to Hennessey. The trial court awarded Hennessey ten percent of these proceeds, or $1,266.00. Neither party disputes that $1266.00 was the proper measure of Hennessey's actual damages in this case. The court also found that appellants' reasonable attorney fees at the trial level would be $2400 but did not award them.

In their first two points of error appellants challenge the court's finding that they were not consumers as defined by the Act. Before any recovery under the DTPA can be had it is necessary to plead and prove that the complaining party was a "consumer." *Woods v. Littleton*, 554 S.W.2d 662, 666 (Tex.1977). Appellant here properly pled that he and Mass-Tex were consumers. We also think that appellant and Mass-Tex proved themselves to be consumers under the DTPA as a matter of law.

A "consumer" as defined at the time the transactions in this case occurred meant "an individual, partnership, corporation, or governmental entity who seeks or acquires ... any goods or services." TEX.BUS & COM.CODE ANN. § 17.45(4) (Vernon Supp.1985). "Goods" as defined under § 17.45(1) of the Act means "tangible chattels or real property purchased or leased for use."

The question raised by this appeal is whether a purchase of cattle made to enter into a commercial ranching partnership with the seller is a purchase of goods "for use" covered by the DTPA. That cattle in general are goods covered by the DTPA is not in dispute. See *Guerra v. Brumlow*, 630 S.W.2d 425 (Tex.App.—San Antonio 1982, no writ). However, our holding in *Rotello v. Ring Around Products*, 614 S.W.2d 455 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.) may have created the impression that only goods which are used up or lose their identity upon being put to use can form the basis of a DTPA action. See *Rotello* at p. 460. We wish to correct that impression here. Since

the ordinary meaning of "for use" includes use as breeding stock, Squanto and the cattle would qualify as goods "for use" even under *Rotello's* overall common-sense standard. But the recent case of *Big H Auto Auction, Inc. v. Saenz Motors*, 665 S.W.2d 756 (Tex.1984), in treating a pre-1983 transaction such as ours, specifically held that the "for use" concept includes purchases purely for resale as well. *Rotello's* extinction "requirement" is therefore obsolete.

*Big H Auto* teaches that goods are goods "for use" "for whatever use was intended to be made of the [goods]." *Big H Auto* at 758. *Big H Auto* prohibits any limitation of the "for use" concept, stating that such limitation "would be contrary to the statutory madate of § 17.44 on construction and application of the Act." *Id.* We therefore hold that the purchase of cattle for commercial cattle raising purposes generally is a purchase of goods "for use" covered by the DTPA.

■ Appellee contends that a percentage interest in a herd of cattle has no physical attributes and therefore is intangible. Thus he argues that Hennessey did not purchase goods, since goods must be "tangible chattels or real property." This contention has little merit. As appellant pointed out at oral argument, the plaintiff consumers in *Rotello* who purchased soybean seed for cultivation did not make separate purchases of each individual seed they bought. They purchased an *amount* of seed, just as Hennessey purchased a *number* of cattle. Both the purchase of the percentage of the herd of 63 cattle and the purchase of the ten percent interest in Squanto are both recorded in bills of sales as would any purchase of individual cattle. Indeed, stating a purchase of cattle in terms of a percentage of a herd instead of individual cattle is one way of preventing confusion and possible strife in a relationship with the seller/partner since the purchaser's share in a herd will remain constant. The purchase of a percentage of a herd of cattle is a purchase of cattle and therefore of goods.

■ Appellee further contends that Hennessey intended in the course of the 1982 transactions with Skinner to purchase an intangible *partnership* interest and therefore cannot invoke the provisions of the DTPA. This argument is without merit. Hennessey received bills of sale purporting to transfer title to his interest in the herd and in the lease. These things are not a partnership interest. Purchase of the cattle and of a portion of the grass lease *enabled* Hennessey to become a partner with Skinner, but the encumbered cattle "form[ed] the basis of the complaint," *Saenz Motors v. Big H Auto Auction*, 653 S.W.2d 521, 523 (Tex.App.—Corpus Christi 1983), *affirmed* 665 S.W.2d 756 (Tex.1984).

■ Further, even if the amounts paid to Skinner are viewed as purchasing a *combination* of tangible goods and of an intangible partnership interest, the DTPA was clearly intended to cover mixed purchases of goods or services on the one hand and non-DTPA items on the other. "[I]t cannot be said that [plaintiffs] are to be excluded from the category of 'consumers' and denied the protection of the Act afforded 'consumers' merely because the sale included real estate as well as 'services.'" *Woods v. Littleton*, 554 S.W.2d 662, 668 (Tex.1977). Appellant's first two points of error are sustained.

■ Appellants contend in their next two points of error that the court erred in failing to treble the first $1000 of the damage award. We agree. It is not disputed that $1266.00 is the measure of appellants' actual damages in this case. As the prevailing parties appellants were also entitled to three times the first $1000 in damages under Section 17.50(b)(1). *Woods v. Littleton*, 554 S.W.2d 662 (Tex.1977). The judgment will therefore be modified to show an award to appellant of $3,266.00. Appellants' third and fourth points of error are sustained.

Appellants contend in their fifth and sixth points of error that the court failed to award them trial and appellate attorney's fees, prejudgment interest, and costs of

court as required by the DTPA. Section 17.50(d) of the DTPA provides that "[e]ach consumer who prevails shall be awarded court costs and attorneys' fees."

■ Having decided that appellants are entitled to recover under the Act, we hold that they are entitled to recover reasonable attorneys' fees. *Greene v. Bearden Enterprises, Inc.*, 598 S.W.2d 649 (Tex.Civ. App.—Fort Worth 1980, writ ref'd n.r.e.). The trial court found that "plaintiffs' reasonable attorney's fees in this matter are $2,400 through time of trial," but did not carry this award through to the judgment. This finding was supported by evidence at trial. *Cf. Blumenthal v. Ameritex Computer Corp.*, 646 S.W.2d 283, 288 (Tex.App. —Dallas 1983). Since the court has already found reasonable attorney's fee through time of trial, we see no need to remand the case for another finding on the same issue. Consequently the judgment will be modified to show an award to appellants of $2400 for attorneys' fees through time of trial.

■ Appellants also request an award of reasonable attorneys' fees on appeal. The trial court made no finding concerning attorneys' fees on appeal. Appellants mentioned appellate attorneys' fees in two of their early pleadings but presented no evidence of what would be a reasonable attorneys' fees on appeal. A demand for reasonable attorneys fees is for unliquidated damages, and the award of such a fee must be upon evidence in support of pleadings. *Blumenthal v. Ameritex Computer Corp.*, 646 S.W.2d 283, 287 (Tex.App.—Dallas 1983, no writ). It is clear that when a trial court *grants* an award of attorneys' fees without any evidence in the record to support such an award, the proper action on appeal is to remand that part of the judgment awarding attorneys' fees for a determination of the reasonable amount of attorneys' fees to be awarded. *Id.; First Nat'l Bank of Irving v. Shockley*, 663 S.W.2d 685 (Tex.App.—Corpus Christi 1983, no writ). Remand is also the proper measure when an award is *denied* but evidence was presented to the court by stipulation of

what reasonable attorneys' fees would be in the case. *Saenz Motors v. Big H Auto Auction, Inc.*, 653 S.W.2d 521, 525–7 (Tex. App.1983). This is also true if such evidence was confusing or inconclusive. *Guerra v. Brumlow*, 630 S.W.2d 425, 431 n. 2 (Tex.App.—San Antonio 1982, no writ). Appellants cite two cases for the proposition that remand is proper where attorneys' fees were denied and no evidence in the form of stipulation or bill of exception appears to have been submitted, *Espinoza v. Victoria Bank & Trust Co.*, 572 S.W.2d 816, 829 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.) and *McDonald v. Savoy*, 501 S.W.2d 400, 408 (Tex.Civ.App.— San Antonio 1973, no writ). These are not DTPA cases.

Rule 373 of the Texas Rules of Civil Procedure requires "that at the time an order of the court is made or sought, a party should make known to the action that he desires the court to take *and the grounds therefor...*" (emphasis added). *See Hurst v. Sears Roebuck & Co.*, 647 S.W.2d 249, 252 (Tex.), *appeal on remand* 652 S.W.2d 563 (Tex.App.—Fort Worth 1983, writ ref'd n.r.e.).

■ In the present case the following exchange took place between appellants' attorney and the court at the close of the trial:

> MR. PEARSON: Your Honor, I neglected to—My attorney's fees were chopped before and after lunch and I neglected to testify—
>
> THE COURT: Well, it doesn't matter.
>
> MR. PEARSON: Never mind. Thank you, your Honor.

That part of appellants' fifth point of error requesting attorneys' fees through time of trial and costs in the trial court is sustained; that part requesting appellate attorneys' fees is overruled.

■ The sixth point of error raises the issue of prejudgment interest. The measure of damages possible to appellants in this case was "fixed by conditions" at the time of the sale of the cattle to appellants. *Building Concepts, Inc. v. Duncan*, 667

S.W.2d 897 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). Appellants were entitled to prejudgment interest at the rate of six percent per annum on the contract for the sale of the cattle from the date of the sale of the interest in the sixty-three cows. Appellant's sixth point of error is sustained.

That part of the judgment which awarded Patrick Hennessey and Mass-Tex Enterprises, Inc. $1266.00 without attorneys' fees through time of trial and without prejudgment interest and costs in the trial court is modified to allow Patrick Hennessey and Mass-Tex Enterprises, Inc. to recover from appellee Sam Skinner $3,266.00 together with $2400 in attorneys' fees through time of trial, costs in the trial court and on appeal and prejudgment interests as set out above in this opinion. The remainder of the judgment is affirmed.

Modified and Affirmed.

SEARS, Justice, concurring.

I agree with the results reached in this appeal. However, I do so because the trial court entered findings of fact that appellant purchased an interest in the herd *before* the parties entered into a partnership agreement as to the raising and selling of the cattle. This finding of fact is not attacked on appeal.

In the event appellant had entered into a "joint venture" or a "partnership agreement" to raise and sell cattle, without *first* buying an interest in the herd, I would hold the transaction did not fall within the Texas Deceptive Trade Practices Act.