**Tom TEAGUE, et al., Appellants,**

v.

**Jack BANDY, et al., Appellees.**

**No. 3–88–050–CV.**

Court of Appeals of Texas, Austin.

June 13, 1990.

Rehearing Overruled Aug. 1, 1990.

David M. Pruessner, Dallas, for appellants.

Robert Q. Keith, Johnson City, for appellees.

Before ABOUSSIE, POWERS and GAMMAGE, JJ.

ABOUSSIE, Justice.

Appellees Jack Bandy and Don Bandy brought suit against appellants Tom Teague, Fred DeMatteis, Ken Langone, and Paul Godwin, individually and doing business as Cow Creek Ranch, a Texas Partnership, for damages resulting from alleged violations under the Texas Deceptive Trade Practices Act (DTPA), Tex.Bus. & Com. Code Ann. §§ 17.41–17.63 (1987 & Supp. 1990).[1] Appellants, who had arranged financing for appellees as part of their agreement, had agreed with Lago Vista National Bank to guarantee appellees' debts. When appellees refused to pay the balance on the purchase-money note, the bank called upon the guarantors to pay the balance. Appellants then sought reimbursement by counterclaim. In a non-jury

---

**1.** All statutory references are to the Business & Commerce Code, unless otherwise indicated.

trial, the district court found that appellants had engaged in deceptive trade practices and denied their counterclaim. The trial court assessed damages against appellants in the amount of $38,985.56, plus interest, attorney's fees, and costs. We will affirm the trial court's judgment.

■ The trial court made findings of fact that appellants do not challenge by point of error. The findings are therefore binding on this Court. *McGalliard v. Kuhlmann,* 722 S.W.2d 694, 696 (Tex.1986). Further, appellants do not attack the trial court's judgment as being erroneous except in their third point of error.

Appellees attended the Cow Creek Ranch production sale on May 25, 1985. Godwin, managing partner of Cow Creek Ranch, solicited appellees to purchase an interest being sold at the auction. For $75,000.00, appellees purchased "lot five," which included: (1) a one-half, non-possessory interest in a pregnant black Brangus cow known as GWH Georgi Gal 384/7; (2) a one-half interest in her unborn natural calf; and (3) an interest in her future embryo transfers. The trial court found that appellees purchased a full interest in each "odd embryo transplant calf from the cow"; that appellees purchased the interest solely to receive the live embryos and resulting calves; that appellees paid $75,000 for the embryo interest in the cow; but that appellees received nothing of value in return for their purchase money.

The cow was represented to be an embryo donor cow. By means of artificial stimulation and insemination, the cow previously had been made to produce multiple embryos which then had been removed and placed in surrogate host cows where they were brought to term. Cow Creek Ranch had realized considerable income from the sale of the multiple calves born as a result of this process. Cow Creek Ranch represented to appellees that the cow was pregnant by natural means at the time of the sale; that her delivery date was estimated to be in August; that the cow could be worked in embryo transfer; and that she would be "ready to work" in October.

As partial payment on their purchase, appellees delivered hay worth $16,000.00 to appellants in June 1985. In July, appellees executed a promissory note payable to Lago Vista National Bank in the principal amount of $60,000.00, secured by their interest in Lot 5, which appellants personally guaranteed. The note proceeds were paid to appellants. Appellees made their first payment on the note on March 1, 1986, in the amount of $20,000, plus interest of $2,985.56. When appellees failed to make further payments, the bank accelerated the note on November 20, 1986, and demanded payment from the guarantors. Appellants paid the bank $40,000 as principal and $3,824.94 interest in satisfaction of their obligation under the guaranty, then counterclaimed against appellees for that amount, plus interest, attorney's fees, and costs.

Apparently, in July 1985, the cow prematurely delivered a stillborn calf. In November 1985, an investor purchased Cow Creek Ranch, and appellants dissolved their partnership.

On December 6, 1985, an attempt to induce the cow to produce multiple embryos failed. In January 1986, appellees discussed with Paul Godwin their concern that the cow still had not produced any embryos. Although Godwin denied the fact, the trial court found that Godwin stated that, if there were no results after a year, the purchase price would be refunded.

On February 8, 1986, the cow was moved to Rio Vista Genetics in San Antonio, Texas, a firm specializing in the embryo transfer process. Two subsequent attempts to induce the cow to produce embryos failed. Despite repeated attempts to induce the cow to produce embryos, on May 9, 1986, Rio Vista veterinarian Don McLeod advised appellees that based on the cow's failure to produce embryos, she should no longer be considered an "embryo transfer donor." No cause of the cow's condition could be found.

Appellees demanded a refund of the purchase price. When appellants refused, appellees filed this action. Appellees' standing to sue under the DTPA is not disputed.

Appellees alleged in their original petition, "Defendants have willfully and intentionally misrepresented facts to your Plaintiffs upon which Plaintiffs relied, which willful and intentional misrepresentations of material fact induced Plaintiffs to enter in the ... Contract for the sale of the Cow." They further alleged that "Defendants materially breached the aforesaid Contract for purchase of the Cow ... [because] Plaintiffs have received no value for their purchase price and are entitled to recision of the Contract."

The DTPA permits a consumer to maintain an action where any deceptive trade practice enumerated in section 17.46 is a producing cause of the consumer's actual damages. Section 17.50(a)(1). One prohibited practice is to represent that goods or services have characteristics, uses, or benefits that they do not have. Section 17.46(b)(5). The DTPA further provides that a consumer may maintain an action where any person's unconscionable action or course of action is a producing cause of the consumer's actual damages. Section 17.50(a)(3). An unconscionable action is one that, to the consumer's detriment, results in a gross disparity between the value the consumer received and the consideration paid in a transaction involving the transfer of consideration. *Chastain v. Koonce*, 700 S.W.2d 579, 583 (Tex. 1985); section 17.45(5)(B). A consumer may maintain a DTPA cause of action for unconscionable conduct even if the seller made no specific misrepresentations. *Commercial Escrow Co. v. Rockport Rebel, Inc.*, 778 S.W.2d 532, 538 (Tex.App.1989, writ denied). Neither action requires a consumer to prove that the seller intended to deceive the consumer. *Chastain*, 700 S.W.2d at 583; *Smith v. Baldwin*, 611 S.W.2d 611, 616 (Tex.1980).

The trial court found that appellees had represented to appellants that "the cow would 'work' in embryo transfer, that she would super ovulate [sic] and produce multiple embryos which would become pregnant [sic] and result in the birth of live calves." It also found that "the cow, following the sale of May 25, 1985, did not

have the characteristics, ingredient, use or benefit of an embryo donor cow" and that appellees "received nothing of value in exchange for the $75,000 agreed to be paid or the $38,985.56 which was actually paid."

The trial court found: (1) that appellants had represented that the goods they purchased had characteristics, uses, or benefits that they did not have, and (2) that there was an unconscionable gross disparity between the value that appellees received and the consideration they had paid appellants. Based on these findings, it concluded that appellees should recover their actual damages from appellants under the DTPA. Either basis will support recovery.

Appellants complain there is no evidence that they misrepresented the cow's condition as of the date of sale (point one), no evidence that there was a gross disparity between the consideration paid for Lot 5 and the value received as of the date of sale (point five), and therefore no proof of damages under either theory on the date of sale (point six). In sum, appellants urge that the facts are to be evaluated as of the date of the auction. Such a contention cannot stand and does not bar appellees' recovery. The facts as of the date of the deceptive practice, not necessarily the date of sale, determine the applicability of the DTPA. *Woods v. Littleton*, 554 S.W.2d 662, 667 (Tex.1977). *See Guerra v. Brumlow*, 630 S.W.2d 425, 429–30 (Tex.App.1982, no writ) (DTPA issue must be submitted to evaluate facts as of time of post-sale delivery for use purchased; defendant represented that bull would be good breeder on date delivered for that purpose). There is no requirement, for example, that the unconscionable act occur simultaneously with the sale that forms the basis of the complaint. If in the context of the transaction any person engages in an unconscionable course of action that adversely affects the consumer, that person is subject to liability under the DTPA. *Flenniken v. Longview Bk. & Trust Co.*, 661 S.W.2d 705, 707 (Tex.1983).

Appellants cite *Cen–Tex Portable Bldgs., Inc. v. Young*, 598 S.W.2d 42 (Tex.Civ.App. 1980, writ ref'd n.r.e.), to support their

contention. In *Cen–Tex,* a buyer of a portable building sued the seller under the DTPA for breach of warranty and misrepresentation when one wall was blown off in a storm three months after its purchase. The court held that Young had failed to prove the building's value as of the time of purchase; therefore, the damage issue should not have been submitted. *Id.* at 44. The court did not hold that evidence of the building's condition when the wall was blown off was not probative of the building's condition at the time of sale.

Appellants' contention is unreasonable for several reasons. The cow was with calf at the time of sale and was biologically incapable of producing multiple embryos on that date. The sellers represented that it would be ready to do so in October. Moreover, the parties knew that appellants' interest related only to future embryo production, and that appellants were to receive nothing at the time of sale, including no possession of the cow. There was no deceptive practice until the cow could not perform as Cow Creek Ranch represented that it would. *See Jim Walter Homes, Inc. v. Valencia,* 690 S.W.2d 239, 242 (Tex. 1985) (seller's misrepresentation was in failing to build house properly after asserting that it would). Until a deceptive act occurred, appellees could not have suffered actual damages. Thus, appellants' points relating to the date of sale must be rejected.

■ Appellants have brought several points of error complaining there is no evidence to support certain grounds for recovery. In reviewing a no evidence point, the reviewing court must reject all evidence contrary to the findings and consider only the facts and circumstances that tend to support those findings. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987); *Bounds v. Caudle,* 560 S.W.2d 925 (Tex.1977). If there is any probative evidence in support of the judgment, we must affirm. *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965).

In their first point of error, appellants complain that the trial court erred in rendering judgment for appellees because there was no evidence that they misrepre-sented the condition of the cow as of the date of the sale. They cite only section 2.316(f) for the proposition that livestock is not subject to warranty, and *Guerra* for the proposition that the date of sale controls. Appellees did not seek to recover on a warranty but as a consumer under the DTPA, as did the plaintiff in *Guerra.* Further, *Guerra* does not support appellants' position but, instead, holds that the date to evaluate a bull's breeding ability is not necessarily the date of sale (April 30), or an indefinite future date, but the date it was delivered to exhibit its abilities (June 7). Neither authority compels reversal in the instant cause.

■ A seller misrepresents the condition of goods when he makes a representation of material fact to the consumer that is false, even if the seller is unaware that the representation is false. *Pennington v. Singleton,* 606 S.W.2d 682, 687 (Tex.1980); section 17.46(b)(5). Appellants assert that appellees conceded that all representations concerning the cow were true as of the time of purchase. However, the testimony from Don Bandy that purportedly concedes this fact establishes only that he did not believe that Godwin intended to deceive him. Similarly, the testimony from Jack Bandy establishes only that, to his knowledge, Godwin never misled him. The testimony is not an affirmative admission that the cow possessed at the time of sale all of the characteristics appellants allegedly represented it had. The evidence proved only that before the auction the cow had exhibited the desired qualities and had produced multiple embryos. On the date of sale, the cow was pregnant. After the sale, the cow never again produced multiple embryos, and appellees did not receive any embryo transfer share. Appellees represented that the cow would be ready to work in October and nothing was expected to be received until then.

An unchallenged fact finding holds and evidence shows that appellants represented the cow would work in embryo transfer and that she would superovulate and produce multiple embryos. The parties concede that the cow never produced multiple

embryos. This constitutes some evidence that appellants represented that the cow had characteristics and qualities that it did not have.

Appellants argue that the sale of livestock and its unborn young is not a transaction to which the implied warranties of merchantability and fitness apply. Section 2.316(f). However, they do not cite authority to support their contention that because no such implied warranties exist, an aggrieved purchaser is foreclosed from recovery under the DTPA for unconscionable acts or for misrepresentations made in the transaction. The DTPA provides an independent remedy available in addition to any other existing remedies. Section 17.43. Appellees' status as consumers under the Act is unchallenged; a consumer who proves all the elements necessary to recover damages under the DTPA may recover those damages, notwithstanding the availability of any other remedy. *Woods*, 554 S.W.2d at 669. Such an action is not governed by traditional contractual rules. *Kennemore v. Bennett*, 755 S.W.2d 89, 91 (Tex.1988). Appellees have not alleged that appellants breached any warranty; rather, they have alleged that appellants violated the DTPA. As a result, their DTPA action is not foreclosed by the nonexistence of an implied warranty. Furthermore, section 2.316(f) applies only to sales of existing livestock and its unborn young. Appellees purchased an interest in the cow's *future* embryos. Thus, the entire transaction does not come within the statute.

Appellants contend that they never told appellees that they would receive a specific number of embryos, but there is evidence to suggest that the parties agreed that appellees would receive "three undivided shares for embryo transplant, namely shares 1, 3 and 5" from future flushes. The trial court found that they purchased a full interest in each odd-numbered embryo transplant. Appellants contend that the only representations made to appellees were *opinions and not statements of fact*. This argument ignores the principle that the maker of the statement need not intentionally misrepresent the character of the goods. *Parks v. United States Home Corp.*, 652 S.W.2d 479, 484 (Tex.App.1983, writ dism'd). Finally, appellants do not challenge by point of error the trial court's finding that appellants made false factual representations. Appellants' first point of error is overruled.

In their fifth point of error, appellants assert that there is no evidence of a gross disparity between the amount paid for the interest in the cow and the value received as of the date of sale. Appellants' argument again turns on their contention that any disparity in value must exist as of the date of sale. Appellants contend that appellees admitted at trial that, on the date of sale, the interest in the cow was worth the value appellees bid on that date. Thus, claim appellants, there is no evidence of a gross disparity between the amount paid for the interest purchased and the value appellees received. We have previously noted that under these facts the date of sale is not necessarily the time at which to analyze whether appellants violated the DTPA and the actual damages thereby produced. Even if we assume that appellants' theory is correct, appellees' testimony, in which they allegedly admit that on the date of sale the interest in the cow was actually worth its market value, does not support appellants' argument. Both appellees admitted they bid the market value of the interest in the cow. They were willing to pay $75,000 for what they believed they were buying. However, market value is not synonymous with value received. Whether market participants are sufficiently informed to know of the cow's condition is a separate issue from whether appellees received anything of value from their interest in the cow. The trial court found that appellees received nothing for their money, and appellants cite no evidence to indicate otherwise. Economic loss alone may support recovery. *Vick v. George*, 671 S.W.2d 541 (Tex.App.1983), rev'd on other grounds, but approved as to adjudicated point on appeal, 686 S.W.2d 99 (Tex.1985). Where there is gross disparity between that delivered and that received, there is no requirement to show intent or a specific misrepre-

sentation. *First Texas Sav. Ass'n. v. Stiff Properties*, 685 S.W.2d 703, 707 (Tex.App. 1984, no writ). We will overrule appellants' fifth point of error.

By the second and third points of error, appellants challenge the absence of a finding on producing cause and assert that there is no evidence that any misrepresentation about the contract was a producing cause of actual damages. An aggrieved consumer may not recover under the DTPA unless the allegedly deceptive trade practice was a producing cause of actual damages. *Weitzel v. Barnes*, 691 S.W.2d 598, 600 (Tex.1985); section 17.50(a). Producing cause means an efficient, exciting, or contributing cause. *Rourke v. Garza*, 530 S.W.2d 794, 801 (Tex.1975); *Knebel v. Port Enter., Inc.*, 760 S.W.2d 829, 831 (Tex.App. 1988, writ denied). It is akin to the tort concept of factual causation because it lacks the element of foreseeability imposed by the standard of proximate causation. *Texas Indem. Co. v. Staggs*, 134 Tex. 318, 134 S.W.2d 1026 (1940); *Dubow v. Dragon*, 746 S.W.2d 857, 860 (Tex.App.1988, no writ); *Riojas v. Lone Star Gas Co.*, 637 S.W.2d 956, 959 (Tex.App.1982, writ ref'd n.r.e.).

Appellants contend that the judgment must be reversed because there is no finding of producing cause. However, because the court made findings that would support all the other elements necessary to sustain a judgment for appellees, we will supply the omitted finding by presumption in favor of the judgment if there is evidence to support such a finding. Tex.R. Civ.P.Ann. 299 (1977).

Appellants argue that the only misrepresentation the trial court found was that Paul Godwin falsely represented that appellees could obtain a full refund at any time during the first year after the purchase. They allege that Godwin made the statement eight months after the purchase, and at a time when appellees knew he was no longer associated with Cow Creek Ranch. The contract of sale contained a clause that appellants vigorously assert means that refunds may only be obtained for six months after the sale. Thus, claim

appellants, Godwin's statement was a post-loss representation that cannot constitute a producing cause of actual damages because the loss was sustained more than six months after the date of purchase. *Royal Globe Ins. Co. v. Bar Consultants, Inc.*, 577 S.W.2d 688, 694 (Tex.1979); *McCrea v. Cubilla Condominium Corp.*, 685 S.W.2d 755, 759 (Tex.App.1985, writ ref'd n.r.e.).

As previously noted, the evidence established and the trial court found that there was a gross disparity between the amount appellees paid for Lot 5 and the value they received. The trial court found that the disparity was unconscionable. This constitutes evidence that without the unconscionability, there would have been no actual damages. Furthermore, the record discloses much evidence that appellees purchased their interest in the cow because Godwin assured them that the cow was a good breeder and would produce multiple transplantable embryos. The sales catalog showed her to be a top donor cow that would be ready to work in embryo transfer in October 1985. This constitutes evidence of producing cause, even disregarding any post-sale representations. *See Best v. Ryan Auto Group, Inc.*, 33 Tex.S.Ct.J. 104 (Nov. 22, 1989) (evidence that seller represented inventory was included in sale of motorcycle dealership when creditor of seller repossessed inventory after sale is some evidence of producing cause). Appellees were not obliged to plead or prove that they relied upon any misrepresentation; their burden was to show only that the misrepresentation or unconscionable gross disparity produced their damages. *See Weitzel*, 691 S.W.2d at 600.

Because it is supported by evidence, and because the trial court found all other elements necessary for recovery, we hold that the trial court impliedly found in support of its judgment that the unconscionability and the misrepresentations were producing causes of appellees' actual damages. Findings concerning any post-sale representations were not necessary to support the judgment and do not require reversal. The

second and third points of error are over-ruled.

■ Appellants allege in their fourth point of error that the trial court improper-ly ordered them to refund appellees' mon-ey. They contend that this refund order was based on evidence that a long-standing custom of the Texas cattle industry is to refund all sums spent to purchase unborn calves when it becomes evident that the intended mother cow will never produce calves. Appellants contend that custom cannot vary the contract or create a guar-antee where one would not otherwise exist. *See, e.g., Corso v. Carr,* 634 S.W.2d 804, 808 (Tex.App.1982, writ ref'd n.r.e.). We will assume without deciding that the exist-ence of such a custom cannot create liabili-ty where a seller would not otherwise be liable. It is true that the trial court found that there is such a custom, but again, the finding is not necessary to support the judgment. The court did not state in its conclusions of law that appellants must refund appellees' money. The trial court's judgment does not order appellants to re-fund money to appellees based upon the industry custom. Instead, it recites that appellees "shall have and recover of and from" appellants. We are unable to dis-cern, and appellants do not indicate to us, how the trial court erred in this regard. Appellants have not shown that the error, if any, contributed to the rendition of an erroneous judgment. Because other find-ings exist to support the judgment, any error in this regard was harmless. Tex.R. App.P.Ann. 81(b) (Pamp.1990). Appellants' fourth point of error is overruled.

■ In their sixth point of error, appel-lants contend that appellees failed to prove that they incurred damages as of the time of the sale. Appellants do not contend that, if evidence exists to support an award of damages, the damages awarded were improperly calculated. As noted earlier, this contention is untenable, in the context of an unconscionability theory, because ap-pellees were not intended to receive any-thing of value until well after the date of sale. Appellees are entitled to the differ-ence between the price paid and the value

received. *W.O. Bankston Nissan, Inc. v. Walters,* 754 S.W.2d 127, 128 (Tex.1988). The contention is equally unpersuasive un-der a misrepresentation theory because there is some evidence that, as of the date of the deceptive practice, appellees incurred damages. Appellants' sixth point of error is overruled.

■ Appellants raise three points of er-ror regarding their counterclaim. First, appellants complain that the trial court erred in failing to render judgment for them on the counterclaim because the trial court found that they paid the balance owed on the Lago Vista note (point seven). Second, appellants complain of the trial court's exclusion of the document evidenc-ing a guaranty release and assignment of the promissory note on the grounds of hearsay (point eight). Third, appellants complain that the trial court erred in not awarding attorney's fees under their coun-terclaim (point nine). Appellants cite no authority in support of their eighth and ninth points of error, and they are over-ruled. *Rayburn v. Giles,* 182 S.W.2d 9 (Tex.Civ.App.1944, writ ref'd).

The trial court found that appellees de-faulted on the promissory note; that appel-lants were called upon as guarantors to pay the balance owed to the bank on appel-lees' note; and that appellants made pay-ment in full the balance owed the bank. Appellants argue that "[i]t is settled law in Texas that a surety or guarantor who has paid the debt of his principal immediately acquires the right of action against the principal for the debt so paid." *Fulton v. South Oak Cliff State Bank,* 439 S.W.2d 730, 733 (Tex.Civ.App.1969, writ ref'd n.r.e.). *See Highlands Cable Television v. Wong,* 547 S.W.2d 324 (Tex.Civ.App.1977, writ ref'd n.r.e.).

■ We acknowledge the legal principle asserted. However, appellants do not cite cases that involve the consumer situation presented here. Under these facts, the guarantors who sold the goods in dispute, made possible the financing by their guar-anty, received the loan proceeds, and are now seeking to recover money repaid to the lender under their guaranty of the buyer's

loan agreement are also the sellers found liable for violating the DTPA in the transaction that gave rise to the loan. The financing arrangement was the means by which appellants concluded the sale of Lot 5 to appellees. The DTPA violation arose out of the sales transaction. Appellants do not cite authority that permits them to recover against the buyer in this situation. In essence, the parties have been restored to their original positions. Appellants are attempting to recover under guaranty principles sums which they would not be entitled to collect directly from appellees due to their DTPA liability. Appellants acquired the bank's position only by means of a transaction with appellees that violated the DTPA. They cannot improve their position as to the wronged consumer merely by repaying money they received but were not due. We hold that, under these facts, appellants cannot recover against appellees on their counterclaim. Appellants' seventh point of error is overruled.

The judgment of the trial court is affirmed.