

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-19-00254-CV

———————————————————

SSCP MANAGEMENT INC., SDHAROD ENTERPRISES, INC., APPLE TEXAS RESTAURANTS, INC., AND TEXAS APPLE, LLC, Appellants

V.

SUTHERLAND/PALUMBO, LLC, Appellee

On Appeal from the 43rd District Court
Parker County, Texas
Trial Court No. CV-18-1720

Before Kerr, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION ON REHEARING

On August 6, 2020, we issued a memorandum opinion in this interlocutory appeal, reversing in part and affirming in part the trial court's denial of the motion to dismiss filed by Appellants SSCP Management, Inc.; Sdharod Enterprises, Inc.; Apple Texas Restaurants, Inc.; and Texas Apple, LLC. Appellee timely filed a motion for rehearing. We deny the motion for rehearing, withdraw our August 6, 2020 opinion and judgment, and substitute the following.

Appellants filed their motion to dismiss under the Texas Citizens Participation Act. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.003, 51.014(a)(12). Appellee Sutherland/Palumbo, LLC sued Appellants alleging that they had conspired to fraudulently induce Sutherland to purchase real property at an artificially inflated price. Appellants moved to dismiss the claims under the TCPA, the trial court denied the motion and awarded Sutherland attorney's fees, and Appellants brought this appeal. Because we hold that Appellants established their entitlement to dismissal of many of Sutherland's claims and that Sutherland was therefore not entitled to attorney's fees, we affirm in part and reverse in part.

## Background

In its petition, Sutherland alleged that on August 1, 2016, Texas Apple, LLC entered into a 25-year lease with Sdharod[1] (the 2016 lease) to operate an existing Applebee's restaurant on Sdharod's property in Parker County and that, soon thereafter, Sdharod began marketing the property to sell it. The marketing material for the property described the offering as newly 25-year "absolute NNN leased," with the lease guaranteed by tenant "Apple Texas Group." The materials state that Apple Texas Group operates 69 units and has won the Entrepreneur of the Year award from Ernst & Young, "among many other accolades." The materials described the new lease as featuring ten percent rental increases every five years.[2] Sutherland and Sdharod

---

[1]In its response to Appellants' TCPA motion, Sutherland alleged that the tenant under a prior 2010 lease was Apple Texas Restaurants, Inc. and that "Apple Texas Group" formed Texas Apple, LLC to be a strawman tenant for the property under the 2016 lease. Sutherland asserted that Apple Texas Group is a "generic name under which [the Applebee's Defendants] publicly operate" but that Sutherland "cannot locate any 'Apple Texas Group' formal entity or assumed name filing." Sutherland claimed Sdharod is one of the entities that operates under that umbrella and is the holding company for Texas Apple, LLC, which was formerly known as Texas Applebee's, LLC.

[2]Sutherland asserted in its TCPA response that when Appellants executed the 2016 lease, the property had an existing lease that was not due to expire until October 7, 2030, that the base monthly rent under that lease was $15,000, and that the tenant, unable to pay the full rent, had been paying only $10,000 a month. Nevertheless, the parties executed the 2016 lease, which raised the monthly rent to $24,583, with increases every five years throughout the lease term. In other words, Sutherland asserted that, in order to make the tenant—and therefore the property—look more valuable to potential buyers, Appellants executed the new lease with a higher monthly rent that they knew the tenant could not pay and then used that new, unsustainable lease to market the

3

executed a sales agreement for the property on August 30, 2016. The parties closed on October 2016, and Sdharod assigned the 2016 lease to Sutherland.

Sutherland alleged that during negotiations, it had been told that Texas Apple "was current on all lease obligations and financially sound and, thus, had the ability and financial circumstances" to comply with the 2016 lease's terms but that soon after the purchase, Texas Apple began falling behind on its rent and asked that its rental payments be cut by more than sixty percent. Sutherland alleged that Appellants had conspired to inflate the rental payments, had entered into the 2016 lease in order to inflate the value of the property, and had conspired to induce Sutherland to purchase the property. It further contended that it had been unaware prior to the sale that Sdharod, the property owner, and Texas Apple, the tenant, were related entities. Sutherland sued for breach of contract, fraud, fraud by nondisclosure, fraudulent inducement, fraud in a real estate transaction, negligent misrepresentation, conspiracy, violations of the Deceptive Trade Practices Act, and common law and statutory false advertising. The petition did not set out any specific acts by SSCP Management or Apple Texas Restaurants, but it did contain allegations against "defendants" generally.[3]

_____

property. Sutherland further asserted that, contrary to the marketing materials, the tenant under the new lease had no other assets and operated no other restaurant units.

[3]Sutherland also sued SRS Real Estate Partners, LLC and SRS National Net Lease Group, LP, which had been involved in marketing the property. Those two entities were originally parties to this appeal, but we granted their motion to dismiss. *See*

4

Appellants filed a motion to dismiss under the TCPA, requesting dismissal of all of Sutherland's claims except the breach of contract claim. SSCP Management and Apple Texas Restaurants asserted that they had been sued only "because of [their] association with the other defendants by means of common ownership and/or management." They further asserted that Sutherland's suit was based on communications by Texas Apple and Sdharod that were made in connection with a matter of public concern: economic wellbeing and goods and services in the marketplace. They also argued that the suit complained of their "exercise of their right of association because all of [Sutherland]'s claims against [Appellants] center on [Appellants]' actions and communications as they express, promote, pursue, or defend common interests—e.g., entering into leases, marketing property for sale, negotiating, conveying property, assigning leases, conducting business, and advertising, among other things."

Sutherland filed, and the trial court granted, a motion to conduct limited discovery. Sutherland then filed a response to Appellants' TCPA motion, arguing that the claims were not based on communications regarding a matter of public concern or communications implicating Appellants' rights of association. It further asserted that the commercial speech exception applied, and it attached evidence to support its claims.

*SSCP Mgmt. Inc. v. Sutherland Palumbo, LLC*, No. 02-19-00254-CV, 2019 WL 4866313, at *1 (Tex. App.—Fort Worth Oct. 3, 2019, no pet.) (mem. op. per curiam).

5

In its TCPA response, as part of its effort to make a prima facie case for its claims, Sutherland provided factual details more fully describing the basis of its suit. *See Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019) (stating that to meet its burden, the plaintiff must provide enough detail to show the factual basis for its claim and enough evidence to support a rational inference that the allegation of fact is true). The details included facts about Appellants' alleged financial problems beginning in 2014; their decision to market the property using the 2016 lease—with significantly higher monthly rent than the tenant was currently paying or was capable of paying—to misrepresent the financial strength of the tenant; and their efforts at concealing those financial difficulties during Sutherland's due diligence by failing to disclose requested information that, if disclosed, would have revealed Appellants' previous misrepresentations.

The TCPA motion was overruled by operation of law on June 24, 2019. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.008(a). However, on July 5, 2019, the trial court signed an order denying the motion and awarding Sutherland $93,575 in attorney's fees. *See id.* § 27.009.

## Discussion

### I. Appellants did not establish the TCPA's applicability to Sutherland's claims that are not based on, related to, or in response to communications.

In Appellants' first issue, they ask whether the trial court erred by denying their TCPA motion. They argue that they proved by a preponderance of the evidence that

6

Sutherland's claims were based on, related to, or were in response to their exercise of the right of free speech and right of association; that Sutherland did not prove by a preponderance of the evidence the applicability of the TCPA's commercial speech exemption; and that Sutherland did not introduce clear and specific evidence to establish each element of its claims. While we agree that Appellants were entitled to dismissal of many of Sutherland's claims for the reasons discussed later in this opinion, Appellants did not meet their burden to show that *all* the claims fall within the TCPA.

A defendant seeking dismissal under the TCPA has the initial burden to produce a preponderance of the evidence[4] that the legal action is based on, relates to, or is in response to the exercise of the rights to free speech, to petition, or of association. *Ray v. Fikes*, No. 02-19-00232-CV, 2019 WL 6606170, at *2 (Tex. App.—Fort Worth Dec. 5, 2019, pet. denied) (mem. op.) (citing Tex. Civ. Prac. & Rem. Code Ann. § 27.005). If the defendant meets that burden, the burden shifts to the plaintiff to produce clear and specific evidence of a prima facie case for each element of each claim. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). If the plaintiff does so, the defendant may still have the

---

[4]The TCPA was amended in 2019. Act of May 20, 2019, 86th Leg., R.S., ch. 378, H.B. 2730, 2019 Tex. Gen. Laws 684 (amending Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 2, H.B. 2973 and Act of May 27, 2013, 83rd Leg., ch. 1042, § 2, H.B. 2935). These amendments do not apply to this case. *See id.* §§ 11–12, 2019 Tex. Gen. Laws at 687. All references in this opinion to the TCPA are to the version that applies to this case. Section 27.005, as amended, now states that the legal action must be dismissed if the movant "demonstrates" the TCPA's applicability, but the applicable version of that section requires the movant to show the TCPA's applicability by a preponderance of the evidence.

claims dismissed by establishing each element of a valid defense to the claims. *See id.* § 27.005(d).

Appellants asserted that the TCPA applies to the claims against them because the claims were based on, related to, or in response to the exercise of the rights of free speech and association. The TCPA defines the exercise of the rights of free speech and association to mean, respectively, "a communication made in connection with a matter of public concern" and a communication between individuals who "join together to collectively express, promote, pursue, or defend common interests." *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001. The TCPA defines a communication as "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* This definition does not include a failure to communicate. *Ray*, 2019 WL 6606170, at *3. Accordingly, if any of Sutherland's claims are based on Appellants' alleged failure to communicate, those claims are not subject to the TCPA's dismissal procedure. Because "[t]he basis of a legal action is not determined by the defendant's admissions or denials but by the plaintiff's allegations," *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017), our first step in determining whether the TCPA applies is to review Sutherland's pleadings.

## A.  Fraud by nondisclosure

In pleading its claim for fraud by nondisclosure, Sutherland alleged that "Defendants" concealed and failed to disclose to Sutherland "certain information," "including, but not limited to, the relationship between [Sdharod] and [Texas Apple],

8

that the monthly and annual rental payments due under the Lease were inflated to garner a higher purchase price for the Property, and that [Texas Apple] could not pay the inflated monthly and annual rental payment . . . ." This claim is based on Appellants' failure to communicate, and, accordingly, the TCPA does not apply. *See Ray*, 2019 WL 6606170, at *3. We overrule Appellants' first issue as to Sutherland's fraud by nondisclosure claim.

## B. Conspiracy

Sutherland also pled a claim for conspiracy to commit fraud. Specifically, the petition alleged that Appellants "conspired to defraud Plaintiff in a real estate transaction" and that Appellants had a meeting of the minds to defraud Sutherland "*by failing to disclose information*, including, but not limited to, the intentionally inflated terms of the Lease to garner a higher sales price for the Property and *materially mispresenting* the financial strength of the Property and the Lease including the Tenant." [Emphasis added.] Because this paragraph alleges that Appellants had a meeting of the minds to fraudulently fail to disclose information, Sutherland's conspiracy claim appears to be based, at least in part, on the failure to communicate. Accordingly, the trial court did not err by denying the TCPA motion as to the conspiracy claim. We overrule Appellants' first issue as to the conspiracy claim.

## C. DTPA violations

### 1. Failure to disclose

Sutherland pled several violations of the DTPA by Appellants. Most of those violations involved Appellants' alleged misrepresentations to Sutherland. However, Sutherland also pled that Appellants violated the DTPA by failing to disclose "known information at the time of the transaction that the consumer would [not] have entered into if the information had been disclosed." *See* Tex. Bus. & Com. Code Ann. § 17.46(b)(24). Like the fraud by nondisclosure claim, a claim based on this alleged DTPA violation is based on the failure to communicate and therefore does not fall within the TCPA. *See Ray*, 2019 WL 6606170, at *3. We overrule Appellants' first issue as to this claim.

### 2. Unconscionable acts

Sutherland further alleged that Appellants violated the DTPA by committing "unconscionable acts." For purposes of the DTPA, "[u]nconscionable action or course of action" is "an act or practice [that], to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code Ann. § 17.45(5). A DTPA claim for unconscionable acts need not be based on misrepresentations. *Id.* §§ 17.45(5), 17.50(a)(3); *Teague v. Bandy*, 793 S.W.2d 50, 54 (Tex. App.—Austin 1990, writ denied). If Sutherland based this claim on an allegation that Appellants committed an unconscionable act by failing to disclose information and then taking advantage of Sutherland's lack of knowledge of that

10

information, Sutherland's claim is not based on, related to, or in response to a communication.

Appellants had the burden to produce a preponderance of the evidence that Sutherland's unconscionability claim is based on, relates to, or is in response to conduct protected by the TCPA. *Ray*, 2019 WL 6606170, at *2. Sutherland's petition did not provide factual details about what acts of Appellants were unconscionable under the DTPA. Reviewing Appellants' TCPA motion gives us no further guidance for determining if this claim is in response to protected rather than unprotected conduct. *See Beving v. Beadles*, 563 S.W.3d 399, 409 (Tex. App.—Fort Worth 2018, pet. denied). The motion lists the alleged communications on which Sutherland based some of its claims but does not discuss the specific claims and their elements and does not address how claims that do not appear to involve communications are nevertheless based on communications protected by the TCPA.

Sutherland's TCPA response provides no further evidence to satisfy Appellants' burden. *See Weber v. Fernandez*, No. 02-18-00275-CV, 2019 WL 1395796, at *4 (Tex. App.—Fort Worth Mar. 28, 2019, no pet.) (mem. op.) (stating that in our initial determination of whether the TCPA applies, we based that determination on the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based, performing a "holistic review of the pleadings"). In its response, Sutherland relied on both Appellants' misrepresentations and their failure to disclose information to provide factual support for all of the alleged DTPA violations, including

11

its unconscionability claim, without identifying which violations were based on misrepresentations, which were based on failures to disclose, and which, if any, were based on both. Thus, Sutherland's unconscionability claim appears to be based on both communications and on non-communications—activity that is not protected by the TCPA. Because Sutherland's DTPA unconscionability claim is, at best, based on a mix of protected and unprotected conduct, the trial court did not err by denying the TCPA motion as to the unconscionable action claim. *See Beving*, 563 S.W.3d at 409; *Walker v. Hartman*, 516 S.W.3d 71, 81 (Tex. App.—Beaumont 2017, pet. denied). We overrule Appellants' first issue as to this claim.

### 3. Breach of warranties

Sutherland further alleged that Appellants violated the DTPA by breaching implied warranties. Sutherland's petition did not specify what implied warranty was breached in this case. Its TCPA response did not provide further information on that point, stating only that its evidence established a prima facie case of a DTPA claim based on breach of an implied warranty. However, Appellants had the burden to establish that the TCPA applies to this claim, and their TCPA motion does not explain how Sutherland's allegation of a breach of an implied warranty was based on, related to, or in response to communications on a matter of public concern, rather than the failure to communicate or other conduct. None of the pleadings or evidence on file establish the basis of this claim or that the claim relates to communications. Thus, regardless of the ultimate merits of this claim, Sutherland's claim may be based on communications,

on non-communications, or both. Accordingly, Appellants failed to establish the TCPA applies to this claim.

Finally, Sutherland alleged that Appellants violated the DTPA by breaching express warranties. Unlike an implied warranty, an express warranty requires a communication. *See Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 436 (Tex. 1997). However, Appellants did not establish that the claim is based on the marketing materials and did not demonstrate that the claim is otherwise based on a communication involving a matter of public concern. Like with Sutherland's implied warranty claim, Sutherland's pleadings do not make clear what express warranty Appellants breached, how Appellants breached the warranty, or whether they breached it through their communication (and if so, which communication) or through actions or inaction. The TCPA motion and Sutherland's response do not provide that information either. Appellants therefore did not establish that this claim arose from their exercise of the right of freedom of speech and that the TCPA therefore applies.

Appellants also failed to establish that the communication on which Sutherland based the express warranty claim was a communication between Appellants and Sutherland who had joined together to collectively express, promote, pursue, or defend an interest relating to the public. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001; *Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 476 (Tex. App.—Houston [1st Dist.] 2020, pet. filed) (en banc). Appellants asserted in their TCPA motion that Sutherland's claims involved the right of association as defined by the TCPA because "all of [Sutherland]'s

claims against [Appellants] center on [Appellants]' actions and communications as they express, promote, pursue, or defend common interests—e.g., entering into leases, . . . negotiating, conveying property, assigning leases, conducting business, and advertising, among other things." Most of these activities relate to the parties' private business dealings that they engaged in for their own personal profit and not to an interest shared by the public or a group. *See Kawcak v. Antero Res. Corp.*, 582 S.W.3d 566, 576 (Tex. App.—Fort Worth 2019, pet. denied). While marketing property for sale can involve an interest shared by the public, Appellants did not establish either that the express warranty was contained in the marketing materials or that the express warranty claim otherwise relates to the marketing materials. Accordingly, Appellants did not establish that the TCPA applies to this claim. We overrule this part of Appellants' first issue.

## II. The TCPA applies to the remainder of Sutherland's claims.

Sutherland's remaining claims are all based on and are related to alleged misrepresentations made by Appellants, primarily representations relating to the value of the property and the viability of the restaurant tenant. For many of the alleged misrepresentations, Sutherland's petition does not identify which of the defendants made them; the petition states only that "Defendants"—which includes Appellants and other defendants—made the communications. Thus, the remaining claims against Appellants are based on and are related to communications.

**A.      The communications were on matters of public concern.**

The next step in our analysis is to determine if these alleged communications were on a matter of public concern. Sutherland's petition establishes that they were.

The applicable version of the TCPA defines a "matter of public concern" to include an issue related to economic well-being. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(7). Sutherland's remaining claims are all based on or related to allegations that Appellants marketed the property with misrepresentations about the financial condition and size of the tenant and a fraudulent lease entered into solely for the purpose of inflating the value of the property above its true value. The marketing materials related to the economic well-being of the tenant on the property and the potential economic well-being of the buyer. These statements were publicly shared and had "relevance to a public audience of potential buyers or sellers." *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 135 (Tex. 2019) (discussing the phrase "good, service, or product in the marketplace"). Because the representations were related to the value of the property and expected future revenue stream of potential buyers, were shared publicly, and had relevance to a public audience of potential buyers, they were statements on a matter of economic well-being and thus on a matter of a public concern under the TCPA. *See Schimmel v. McGregor*, 438 S.W.3d 847, 858–59 (Tex. App.—Houston [1st Dist.] 2014, pet. denied); *contra Gardner v. Tuskey*, No. 01-19-00599-CV, 2020 WL 2069809, at *6 (Tex. App.—Houston [1st Dist.] Apr. 30, 2020, no pet.) (mem. op.) (noting that representations by sellers of property were made after the parties had

15

entered into a purchase contract for real property and were made only to the buyers, and thus the representations, "with a limited business audience concerning a private transaction," had no relevance to a public audience). Accordingly, the remaining claims are based on or related to communications on a matter of public concern,[5] and Appellants met their burden to show that the TCPA applies to them.

## B. The commercial speech exception does not apply.

The TCPA does not apply to "a legal action brought against a person primarily engaged in the business of selling or leasing goods or services," if the statement or conduct on which the action is based "arises out of the sale or lease of goods, services, . . . or a commercial transaction in which the intended audience is an actual or potential buyer or customer." Tex. Civ. Prac. & Rem. Code Ann. § 27.010(a)(2). This commercial speech exemption applies to exclude a legal action from the TCPA if

> (1) the defendant was primarily engaged in the business of selling or leasing goods, (2) the defendant made the statement or engaged in the conduct on which the claim is based in the defendant's capacity as a seller or lessor of those goods or services, (3) the statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services the defendant provides, and (4) the intended audience of the

---

[5]Sutherland also relies on subsequent communications between Sutherland and Appellants and Appellants' representatives to support its fraud by nondisclosure claims, asserting that in all the communications among the parties, Appellants never disclosed that statements in the marketing materials were false. But, as stated above, because the basis of the fraud by nondisclosure claims is not what Appellants said in those subsequent communications but what they did not say, those conversations do not support application of the TCPA to the fraud by nondisclosure claims. Sutherland's fraud claims, on the other hand, are based on affirmative representations made in the marketing materials, such as representations about the 2016 lease and the tenant.

16

> statement or conduct were actual or potential customers of the defendant for the kind of goods or services the defendant provides.

*Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688 (Tex. 2018) (per curiam).

Sutherland had the burden to establish the commercial speech exemption's applicability. *Ray*, 2019 WL 6606170, at *5. In Sutherland's TCPA response, it asserted that Appellants "are engaged in the food and hospitality business and marketed and sold the Property in relation to same." Nothing in the pleadings or evidence suggests that Appellants are in the business of buying and selling real estate. By Sutherland's own admission, Appellants are in the food and hospitality business. Appellants' alleged misrepresentations did not arise out of a commercial transaction involving food and hospitality services, and the intended audience was Sutherland and other potential buyers, not Appellants' actual or potential food and hospitality customers. Accordingly, the commercial speech exemption does not apply. *See Castleman*, 546 S.W.3d at 688.

## C. Appellants' motion was not untimely.

Sutherland argues that Appellants' TCPA motion was untimely as to SSCP because SSCP was served on November 28, 2018, and Appellants filed their TCPA motion on January 28, 2019, the sixty-first day after SSCP was served. *See* Tex. Civ. Prac. & Rem. Code Ann. 27.003. The sixtieth day, January 27, was a Sunday. The motion was therefore timely when it was filed the next day. *See* Tex. R. Civ. P. 4.

17

## III. Appellants were entitled to dismissal of the remaining claims.

Because Appellants showed that Sutherland's remaining claims fall within the TCPA, the burden shifted to Sutherland to produce clear and specific evidence to establish a prima facie case for these claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). If it did so, Appellants could still obtain dismissal of the claims by establishing a valid defense to the claims by a preponderance of the evidence. *See id.*

### A. Sutherland's claims for fraud, fraudulent inducement, fraud in a real estate transaction, and negligent misrepresentation

Sutherland's claims for fraud, fraudulent inducement, fraud in a real estate transaction, and negligent misrepresentation all require Sutherland to prove that it relied on Appellants' alleged misrepresentation. Tex. Bus. & Com. Code Ann. § 27.01(a) (fraud in a real estate transaction); *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 496 (Tex. 2019) (fraud); *Mercedes-Benz USA, LLC v. Carduco, Inc.*, 583 S.W.3d 553, 557 (Tex. 2019) (fraudulent inducement); *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653–54 (Tex. 2018) (negligent misrepresentations).

Appellants argued in the trial court that Sutherland could not establish reliance because the sales agreement disclaimed reliance on any representations outside of the contract and thereby negated the reliance element of Sutherland's claims. The sales agreement contained the following disclaimer and as-is clauses:

> (b) Seller's Disclaimer. Buyer acknowledges and agrees that Seller makes absolutely no representations or warranties as to the accuracy or

completeness of any of the Due Diligence Materials and that the Due Diligence Materials are being provided to Buyer on the express condition and understanding that **Buyer cannot rely on and will independently verify the accuracy and completeness of such Due Diligence Materials**.

9.2 <u>Seller Disclaimer as to Property Conditions.</u> EXCEPT POR SELLER'S REPRESENTATION AND WARRANTIES MADE IN ARTICLE 5 OF THIS AGREEMENT, THE SELLER PARTIES (defined below) MAKE NO REPRESENTATIONS OR WARRANTIES WHATSOEVER WITH RESPECT TO THE PROPERTY OR ANY OF THE PROPERTY CONDITIONS AND HEREBY SPECIFICALLY DISCLAIM ANY AND ALL SUCH REPRESENTATIONS OR WARRANTIES. THE SELLER PARTIES FURTHER SPECIFICALLY DISCLAIM ANY AND ALL IMPLIED WARRANTIES WITH RESPECT TO THE PROPERTY, INCLUDING WITH RESPECT TO ITS CONDITION OR FITNESS FOR USE.

9.3 <u>No Reliance by Buyer: AS IS</u>. EXCEPT FOR BUYER'S RELIANCE ON SELLER'S REPRESENTATION AND WARRANTIES MADE IN ARTICLE 5 OF THIS AGREEMENT, **BUYER EXPRESSLY ACKNOWLEDGES AND AGREES THAT BUYER HAS NOT RELIED ON ANY WARRANTIES, PROMISES, UNDERSTANDINGS OR REPRESENTATIONS, EXPRESS OR IMPLIED, ORAL OR WRITTEN, OF ANY SELLER PARTY RELATING TO THE PROPERTY OR ANY PROPERTY CONDITION**, AND THAT BUYER IS ACQUIRING THE PROPERTY IN ITS PRESENT CONDITION AND STATE OF REPAIR, "AS IS" AND "WHERE IS," WITH ALL DEFECTS AND LIABILITIES, LATENT OR APPARENT, INCLUDING THE PRESENCE OF HAZARDOUS MATERIALS (defined below) IN, ON, UNDER OR MIGRATING TO OR FROM THE PROPERTY. SELLER SHALL CONVEY TITLE TO THE PROPERTY TO BUYER, AND BUYER SHALL ACCEPT TITLE TO THE PROPERTY, AT CLOSING, IN "AS IS, WHERE IS" CONDITION.

9.4 <u>Buyer Waivers</u>. EXCEPT FOR BUYER'S RELIANCE ON SELLER'S REPRESENTATION AND WARRANTIES MADE IN ARTICLE 5 OF THIS AGREEMENT, BUYER HEREBY WAIVES ANY AND ALL OBJECTIONS TO, COMPLAINTS ABOUT, OR

CLAIMS REGARDING THE PROPERTY AND THE PROPERTY CONDITIONS. . . .

. . . .

9.6 <u>Disclaimer as to Advice</u>. BUYER ACKNOWLEDGES AND AGREES THAT NEITHER SELLER NOR ANY AGENT OR REPRESENTATIVE OF SELLER HAS ACTED AS AN INVESTMENT, LEGAL, TAX OR FINANCIAL ADVISER TO BUYER IN ANY RESPECT OR OTHERWISE PROVIDED BUYER WITH ANY INVESTMENT, LEGAL, TAX, OR FINANCIAL ADVICE OF ANY NATURE WHATSOEVER.

9.7 <u>Definitions</u>. As used in this Agreement:

. . . .

(e) *"Property Conditions"* means any and all matters regarding, relating to, or otherwise affecting the Property, including:

. . . .

(ii) The business that was conducted on the Property;

12.2 <u>Notices</u>.

. . . .

(o) <u>Entire Agreement; Binding Effect</u>. This Agreement, together with any confidentiality agreement executed by Buyer, constitutes the entire agreement between the parties with respect to the Transaction, and there are no other representations, warranties or agreements, written or oral, between Seller and Buyer relating to the Transaction. **The parties acknowledge and affirm that they did not rely on any statement, oral or written, not contained in this Agreement in making their respective decisions to enter into this Agreement**. . . . [Emphasis added.]

In summary, in the sales agreement, Sutherland agreed that it had not relied on any representations about the condition of the property, including any matters related

to the business conducted on the property. Further, Sutherland expressly acknowledged that in deciding to execute the agreement, it had "not rel[ied] on any statement, oral or written, not contained in this [sales a]greement." The sales agreement gave Sutherland the option not to close if specific conditions were not met, such as if Sdharod failed to comply with its pre-closing obligations. However, Sutherland agreed that, in deciding whether to close, it would not rely on the accuracy and completeness of the due diligence materials provided to it.

The reliance element of a claim can be conclusively negated by an effective contractual disclaimer of reliance on representations about a specific matter in dispute. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 332 (Tex. 2011). "Not every such disclaimer is effective, and courts 'must always examine the contract itself and the totality of the surrounding circumstances when determining if a waiver-of-reliance provision is binding.'" *Int'l Bus. Machs. Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 229 (Tex. 2019) (quoting *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 60 (Tex. 2008)). "The question of whether an adequate disclaimer of reliance exists is a matter of law." *Italian Cowboy*, 341 S.W.3d at 333. In determining the effectiveness of a contractual disclaimer of reliance, courts consider the following factors:

> (1) the terms of the contract were negotiated, rather than boilerplate, and during negotiations the parties specifically discussed the issue which has become the topic of the subsequent dispute;
>
> (2) the complaining party was represented by counsel;
>
> (3) the parties dealt with each other at arm's length;

(4) the parties were knowledgeable in business matters; and

(5) the release language was clear.

*See Lufkin*, 573 S.W.3d at 229.

Here, the sales agreement clearly and expressly disclaims reliance. Further, Sutherland acknowledged in the trial court that the transaction was negotiated at arm's length. The record also showed that Sutherland—which, by its own evidence, is "an entity that invests in various real estate interests and holds total assets valued at approximately \$10–11 million"[6]—is a sophisticated party knowledgeable in business matters. These factors weigh strongly in favor of enforcing the disclaimer.

As for the remaining factor, Sutherland disputes that the record shows that it was represented by counsel. Appellants, however, filed a motion asking this court to take judicial notice of the fact that Sutherland's real estate broker is licensed to practice law in California.[7] Nothing in the record indicates that Sutherland hired the real estate

---

[6] This statement comes from the affidavit of Mark Palumbo, Sutherland's principal. Appellants assert that Palumbo's affidavit should not be considered because Palumbo lacked personal knowledge of the information upon which he purported to testify. For the quoted statement, however, the affidavit shows that Palumbo does have personal knowledge of Sutherland's business matters. For the remainder of the affidavit, Appellants were entitled to dismissal of Sutherland's fraud, DTPA, and negligent misrepresentation claims even if we consider the affidavit, and we therefore overrule Appellants' objections to the affidavit as moot.

[7] Because we hold that the disclaimer language in the sales agreement is binding regardless of whether Sutherland's real estate broker is licensed as an attorney, we overrule the motion as moot.

22

agent to advise it in a legal capacity or that he did so. Sutherland does not dispute, however, that it had a real estate broker acting as an intermediary or that it was free to hire counsel; if it had no legal representation, nothing in the record suggests that it was not by Sutherland's own choice. Under the circumstances of this case, we cannot say that a lack of counsel, if indeed Sutherland had no attorney, weighs strongly against enforcing the disclaimer. *See Pogue v. Williamson*, No. 01-17-00844-CV, 2020 WL 1173708, at *5 (Tex. App.—Houston [1st Dist.] Mar. 12, 2020, no pet.). The other factors all weigh strongly in favor of enforcing the disclaimer. Accordingly, based on the record before the trial court at the time of its ruling, the disclaimer negated the reliance element of Sutherland's fraud and negligent misrepresentation claims. *See id.*

Sutherland contends that the trial court could not have considered Appellants' disclaimer-of-reliance argument because disclaimer of reliance is an affirmative defense and Appellants did not timely bring the defense to the trial court's attention. Although Appellants pled disclaimer in their answer, Sutherland points out that they did not assert it in their TCPA motion to dismiss and did not file their reply—which did assert disclaimer—until the day of the hearing. Although Appellants do not dispute that disclaimer of reliance is an affirmative defense, this court has not directly addressed this issue. Sutherland cites *Man Engines & Components, Inc. v. Shows*, 434 S.W.3d 132, 136 (Tex. 2014), for the proposition that disclaimer of reliance is an affirmative defense that Appellants had to timely raise. That case, however, addresses disclaimer of implied warranties as an affirmative defense to a claim for breach of an implied warranty, not

23

disclaimer of reliance as a defense to a fraud claim, for which reliance is an essential element. The Court noted that disclaimer of implied warranties "performs a similar role [to other affirmative defenses], *not rebutting* the facts asserted by the plaintiff, but establishing an independent reason why the plaintiff should not recover." *Id.* (emphasis added). On the other hand, in *Italian Cowboy*, the Court stated that an effective disclaimer-of-reliance clause in a contract can conclusively negate the reliance element of a plaintiff's claim. *See* 341 S.W.3d at 332.

Regardless, however, of whether disclaimer of reliance is an affirmative defense, and regardless of whether Appellants' asserting it in their answer put the issue before the trial court, *see* Tex. Civ. Prac. & Rem. Code Ann. § 27.006 (requiring trial court to consider pleadings in ruling on TCPA motion), Appellants raised their disclaimer-of-reliance argument at the TCPA hearing.[8] When Sutherland objected to the argument, Appellants countered that reliance was an element of a number of Sutherland's claims and that the disclaimer language was in the sales agreement, which Sutherland had attached to its response as evidence. Their attorney asserted that they needed to be able to talk about the elements of the claim and the evidence Sutherland had attached to its response. The Supreme Court of Texas has stated that arguing a basis for the TCPA's

---

[8]Sutherland asserts that the trial court "did not expressly consider [the issue of disclaimer of reliance] during the hearing," but neither did it expressly decline to consider it, despite Sutherland's objection, and no order states that the trial court had declined to consider it.

applicability at the hearing on a TCPA motion is sufficient to preserve that argument for appellate review, indicating that Appellants' arguing the issue at the hearing is sufficient to raise the matter in the trial court as a basis for granting the TCPA motion.[9] *See Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 896 (Tex. 2018).

Sutherland further argues that only Sdharod signed the sales agreement, so even if the disclaimer is binding, it is binding only as to representations by Sdharod. Sutherland thus essentially argues that it was reasonable for it to decide to buy property based on statements about the property made by a party who did not own it. Even if the law could otherwise support such a claim under the facts of this case, the disclaimer in the sales agreement states that Sutherland was not relying on *any* representations outside of the sales agreement.

Because, under the record before the trial court, the disclaimer-of-reliance clause negated Sutherland's reliance on extracontractual representations by Appellants,

---

[9] Appellants also included disclaimer-of-reliance arguments in their reply to Sutherland's TCPA response. Sutherland argued that the reply was not timely filed and that the trial court should not consider it, and it argues here that the trial court in fact did not consider it. *Cf. Mission Wrecker Serv., S.A., Inc. v. Assured Towing, Inc.*, No. 04-17-00006-CV, 2017 WL 3270358, at *3 (Tex. App.—San Antonio Aug. 2, 2017, pet. denied) (mem. op.) (noting that TCPA does not contain a deadline for filing a response to a TCPA motion but that the trial court has discretion to determine the timeliness of a response). While the trial court did not strike the reply, its order denying Appellants' TCPA motion states that the trial court had considered the motion and Sutherland's response (with no mention of Appellants' reply) and had "entertain[ed] the arguments of counsel." Because the disclaimer-of-reliance issue was brought to the trial court's attention at the hearing, we need not decide whether the trial court should have considered Appellants' reply.

25

Sutherland failed to make a prima facie case for its fraud and negligent misrepresentations claims. We sustain this part of Appellants' first issue.

## B.     Remaining DTPA claims

A claim for a "laundry list" DTPA violation requires proof that the plaintiff relied on the defendant's false, misleading, or deceptive act or practice. Tex. Bus. & Com. Code Ann. § 17.50(a)(1). Accordingly, the sales agreement's disclaimer-of-reliance provision also negates the reliance element of this claim, and Appellants were entitled to dismissal of the claim under the TCPA. We sustain this part of Appellants' first issue.

## C.     False advertising claim

Sutherland pled that Appellants committed common law and statutory false advertising, asserting that "Defendants' false promotion and advertising of the Property constitutes false advertisement" and that "Defendants' false advertising of the Property induced Plaintiff to act and purchase the Property." Sutherland failed, however, to make a prima facie case for this claim.

Texas does not appear to recognize a common law claim for false advertising, *Kodiak Products Co., Inc. v. Deegear*, No. 02-13-00422-CV, 2015 WL 3523195, at *8 (Tex. App.—Fort Worth June 4, 2015) (mem. op.), *judgment withdrawn*, No. 02-13-00422-CV, 2015 WL 5104694 (Tex. App.—Fort Worth Aug. 28, 2015, no pet.) (mem. op.), although Texas has allowed an action for deceit or fraud if the defendant published a false advertisement relied upon by the plaintiff to the plaintiff's detriment. *See, e.g., Seale v. Baker*, 7 S.W. 742, 743–44, 749 (1888). We have already held that Sutherland did not

26

make a prima facie case for fraud, and, consequently, if Sutherland was attempting to assert a claim for fraud based on the marketing materials, the trial court should have dismissed it.

Sutherland's petition did not cite any statute or other authority for its statutory false advertising claim. The DTPA provides some protection from false advertising, prohibiting a person from representing that goods have characteristics that they do not have and from advertising goods with intent not to sell them as advertised. *See* Tex. Bus. & Com. Code Ann. § 17.46(b)(5), (9). To the extent, however, that Sutherland's pleading of a statutory false advertising claim refers to a claim for committing one of the acts in Section 17.46, we have already addressed why that claim must be dismissed.

In its TCPA response, Sutherland set out elements of a claim under the Lanham Act, 15 U.S.C. § 1125(a), asserting that (1) Appellants made a false statement of fact about the property in a commercial advertisement; (2) the statement actually deceived or has a tendency to deceive a substantial segment of its audience; (3) the deception is likely to influence a purchasing decision; (4) Appellants caused the false statement to enter interstate commerce; and (5) Sutherland has been or is likely to be injured as a result. Sutherland asserts these same elements in its brief. However, as a matter of law, the Lanham Act does not apply to the facts of this case. Sutherland, which did not assert "an injury to a commercial interest in reputation or sales," is not within the class of plaintiffs whom Congress authorized to sue for false advertising under the Act. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131–32, 134 S. Ct. 1377,

27

1390 (2014). "A consumer who is hoodwinked into purchasing a disappointing product may well have an injury-in-fact . . . , but he cannot invoke the protection of the Lanham Act." *Id.*; *see also ADB Interest, LLC v. Wallace*, No. 01-18-00210-CV, 2020 WL 2787586, at \*17 (Tex. App.—Houston [1st Dist.] May 28, 2020, no pet. h.) (citing *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1383–84 (5th Cir. 1996) and stating that a communication is not a "commercial advertisement" for purposes of the Lanham Act if it is not an advertisement by a defendant who is in commercial competition with plaintiff). Accordingly, Sutherland failed to make a prima facie case for false advertising, and Appellants were entitled to have the claim dismissed. We sustain the remainder of Appellants' first issue.

**IV.** **The trial court's July 5, 2019 order is not void, but Sutherland was not entitled to attorney's fees, and Appellants are entitled to reasonable attorney's fees and costs, if proven.**

In their second issue, Appellants argue that the trial court erred by not awarding Appellants their costs, reasonable attorney's fees, and other expenses incurred in responding to Sutherland's lawsuit and by not awarding Appellants sanctions against Sutherland. In their third and final issue, Appellants argue that the trial court's July 5, 2019, order awarding Sutherland attorney's fees is a void order with no force and effect. They alternatively assert that, if the order is valid, the trial court erred by awarding Sutherland its costs and attorney's fees because the TCPA motions were neither frivolous nor intended solely to delay.

The trial court's attorney's fees award is not void. While a trial court has only thirty days after the hearing on a TCPA motion to rule on the motion, *see* Tex. Civ. Prac. & Rem. Code Ann. § 27.005, the TCPA does not require the trial court to rule on the question of attorney's fees or sanctions within that time. *See id.* § 27.009; *Eureka Holdings Acquisitions, L.P. v. Marshall Apartments, LLC*, 597 S.W.3d 921, 924 (Tex. App.—Austin 2020, pet. filed); *see also DeAngelis v. Protective Parents Coal.*, 556 S.W.3d 836, 859–60 (Tex. App.—Fort Worth 2018, no pet). We therefore overrule Appellants' third issue in part. However, because Appellants' TCPA motion was meritorious in part and was thus not frivolous and not solely intended to delay, we sustain Appellant's third issue in part and reverse the trial court's award of attorney's fees against Appellants. *See* Tex. Civ. Prac. & Rem. Code § 27.009.

As for Appellants' second issue, because we have ordered the dismissal of some of Sutherland's claims against Appellants, we agree that the TCPA mandates that Appellants recover some amount for attorney's fees and sanctions. *See id.*; *Rich v. Range Res. Corp.*, 535 S.W.3d 610, 613 (Tex. App.—Fort Worth 2017, pet. denied). Accordingly, we sustain Appellants' second issue and we remand the question of Appellants' attorney's fees to the trial court.

**Conclusion**

Having overruled Appellants' first issue and third issue in part, we affirm the trial court's denial of Appellants' TCPA motion as to Sutherland's claims for fraud by nondisclosure, conspiracy, and DTPA violations based on Appellants' alleged

29

nondisclosure, unconscionable acts, and breach of warranties. Having sustained Appellants' second issue and its first and third issues in part, we reverse the trial court's denial of Appellants' TCPA motion as to Sutherland's remaining claims, reverse the trial court's award of attorney's fees to Sutherland, and remand this case for further proceedings.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered: December 23, 2020